715 A.2d 397

**CITY OF PHILADELPHIA, Appellee,**

**v.**

**CLEMENT & MULLER, INC., Appellant.**

**CITY OF PHILADELPHIA, Appellee,**

**v.**

**GARABET, LTD., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided July 21, 1998.

Howard M. Soloman, Stewart M. Weintraub, Philadelphia, for Clement & Muller, Inc. and Garabet, Inc.

Richard Feder, Philadelphia, for City of Philadelphia.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, and NIGRO, JJ.

### OPINION

ZAPPALA, Justice.

The issue in this case is whether the City of Philadelphia may collect a business privilege tax from beer distributors.

In *Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986), we ordered the dismissal of citations filed against a beer distributor for failure to pay the Business Privilege and Mercantile Tax imposed by the City of Harrisburg. Relying on *Wilsbach*, Clement & Muller, Inc. and Garabet, Ltd., filed petitions for refund appeals and petitions for review with the Philadelphia Tax Review Board. The Board denied the petitions, finding *Wilsbach* not controlling because Philadelphia's business privilege tax was adopted under the authority of a different enabling act than the tax at issue in *Wilsbach*.

The common pleas court granted the statutory appeals filed by the beer distributors. The court concluded that the language of the pertinent parts of the enabling acts was identical, and also that the language of the enabling acts was irrelevant to the preemption analysis of *Wilsbach*.

The Commonwealth Court reversed. The court agreed with the Tax Review Board that the authority to impose a business privilege tax granted to Philadelphia by the First Class City Business Tax Reform Act was broader than the authority to impose taxes granted to Harrisburg by the Local Tax Enabling Act. The court also suggested that *Wilsbach* was a plurality decision of limited precedential value and, without identifying it as such, employed reasoning found in Mr. Chief Justice Nix's Concurring Opinion and Mr. Justice (now Chief Justice) Flaherty's Dissenting Opinion.[1] Although we reject the court's reading of *Wilsbach,* we agree that this case is distinguishable and therefore affirm.

The matter of preemption is rooted in the relationship between the constitutional provisions vesting the legislative power of the Commonwealth in the General Assembly, Article II, Section 1, and providing for local government, Article IX, Section 1. In providing for the general welfare of the Commonwealth's citizens, the General Assembly may choose to leave a subject open to control by local governmental bodies, it may enact laws of statewide application that simultaneously allow for local regulation, or local ordinances may be prohibited entirely.

There is generally no difficulty of application where a statute explicitly removes a given subject from local control. Similarly, where some local regulation is permitted its outer bounds can usually be clearly determined; municipal ordinances are valid if they are not contradictory to or inconsistent with the statutory law. In such situations any questions

---

**1.** Mr. Chief Justice Nix's Concurring Opinion found that the City of Harrisburg was prohibited from imposing its business privilege tax on beer distributors because the state had exercised its power to tax and license such distributors, thus vacating the local tax pursuant to the specific terms of the Local Tax Enabling Act. See Act of December 31, 1965, P.L. 1257 § 3, 53 P.S. § 6903. The Commonwealth Court seemingly endorsed this as the proper basis for the decision in *Wilsbach* at footnote 7 of its opinion and the accompanying text.

Mr. Justice (now Chief Justice) Flaherty's Dissenting Opinion relied on the distinction between the regulatory/police power and the taxation power, and expressed the view that preemption of the former did not extend to the latter. The Commonwealth Court seemingly endorsed this view as well at pages 6–7 of its opinion.

are readily resolved because, almost by definition, the intention of the General Assembly is plain. Difficulties arise only when the legislative intent is not explicit but must be inferred.

*Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616, 619–20 (1951), offered the following analytical outline:

the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard.... [I]f the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid.

In *City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh*, 488 Pa. 544, 412 A.2d 1366 (1980), the Court's inquiry into legislative intent took on a broad scope. The issue was whether the City of Pittsburgh's Business Privilege Tax, which was adopted pursuant to the authority of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, § 3, was applicable to businesses generally, could be collected from banks. Citing the existence of "comprehensive banking legislation", the Court held that the tax could not be so applied. Four justices agreed that applying the tax to banks would "impinge" or "encroach" on a legislatively preempted area, rejecting Mr. Justice Nix's dissenting view that a pervasive scheme of *regulatory* legislation does not evidence a legislative intent to disallow local *taxation*.

As previously noted, *Wilsbach* involved a beer distributor cited for the summary offense of failure to pay the Harrisburg Business Privilege and Mercantile Tax. The distributor argued, inter alia, that the city was prohibited from collecting the tax from beer distributors because the state had preempted the field by its comprehensive regulation of the alcoholic beverage industry. The Appellants here argue that Commonwealth Court erred in treating *Wilsbach* as a plurality decision of limited precedential value. We agree.

Mr. Justice Papadakos, in the Opinion Announcing the Judgment of the Court, joined by Mr. Justice Larsen, found *Allegheny Valley Bank* "not inapposite," and read it as requiring the Court "to examine all relevant legislation in order to ascertain the extent of the regulation over an industry and the legislature's purpose in regulating the industry." 519 A.2d at 401–02. He concluded that

> [s]uch pervasive control over all phases of the liquor industry, along with the extensive taxation and fees imposed, indicates the legislature's intent to control this industry and to receive all the benefits inherent by regulating the industry, including raising revenues through regulation to the exclusion of all local attempts to interfere with the state regulation by imposing taxes on a local level.

*Id.* at 402.

This author filed a Concurring Opinion, joined by Mr. Justice McDermott, agreeing that the tax could not be applied to the beer distributor "*because of* the comprehensive legislation by which the General Assembly has pre-empted the field of alcoholic beverages." *Id.* at 403 (emphasis added).[2] Thus a majority of the Court in *Wilsbach*, applying the *Allegheny Valley Bank* preemption analysis to the subject of the sale of alcohol, discerned a legislative intention that local taxation of such businesses is not allowed. Unlike *Wilsbach*, however, this case cannot be governed by the intention *implicit* in the comprehensive legislation governing the sale of alcohol because the General Assembly has stated an *explicit* contrary intention as to this particular tax.

■ The First Class City Business Tax Reform Act, Act of May 30, 1984, P.L. 345, No. 69, § 4(a), 53 P.S. § 16184(a), reads:

> *Notwithstanding a contrary provision of law of the Commonwealth,* including, but not limited to, the act of March 4,

---

**2.** The concurring opinion followed the *Allegheny Valley Bank* precedent notwithstanding serious doubts about the rationale because *Wilsbach* did not present an opportunity to overrule *Allegheny Valley Bank,* and applying a different analysis would have unjustly limited the benefit of that ruling to the banking industry.

1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971 [72 P.S. § 7101 et seq.] ... every person engaging in any business in a city of the first class ... shall pay an annual tax at the rate or rates specified by the city council....

(Emphasis added.) The meaning of the emphasized introductory language is straightforward: regardless of what any other law provides, first class cities are authorized by this act to collect a tax from every person engaging in any business within the city.

The Appellants argue that "distinctions in the enabling statutes are irrelevant under a preemption analysis. The important question is whether the industry in question is so pervasively regulated that the General Assembly has preempted the field." Brief at p. 34. This argument evidences a fundamental misunderstanding about the implied preemption analysis, ignoring its foundation in legislative intent. *Allegheny Valley Bank* and *Wilsbach* inferred a certain legislative intent *in the absence of an explicit statement of intent from the General Assembly.* Where the legislature has expressed its intention explicitly, however, that intention must be given effect.[3]

■ The Appellants argue that the introductory language in question applies only to statutes, not court decisions such as *Wilsbach*. We disagree. A court decision discerning a legislative intent to preempt local control in a given field has the same effect as an explicit declaration of such intent by the General Assembly and is as fully a "provision of law of the Commonwealth" as such a statute. The legislature is pre-

---

**3.** The Appellants' argument that the decision here conflicts with *Wissinoming Bottling Co., et al. v. School District of Philadelphia, et al.*, 654 A.2d 208 (Pa.Cmwlth.1994), affirmed by an equally divided court, 543 Pa. 402, 672 A.2d 279 (1996), and *Liberty Bell Racing Association v. Philadelphia Tax Review Board*, 86 Pa.Cmwlth. 83, 483 A.2d 1063 (1984) allocatur denied, 522 A.2d 51 (Pa.1987) is based on the premise that the taxes in those cases were adopted pursuant to enabling acts "that for all practical purposes are identical" to the enabling act at issue here. Without revisiting those cases in depth, the flaw in this argument is readily apparent. In neither of those cases did the statute authorizing the local tax specifically do so "notwithstanding a contrary provision of law of the Commonwealth."

sumed to be aware of the construction placed upon statutes by the courts, and we perceive no reason why its use of the broad phrase "provision of law of the Commonwealth" should not include decisional as well as statutory law.

The Appellants also assert that the City is wrong in arguing that the General Assembly used the phrase "notwithstanding a contrary provision of law" in order to overrule *Wilsbach*. We do not read the City's brief as having made such a claim. Moreover, although we agree with the Appellants' assertion that the phrase was not included to overrule *Wilsbach*, we do not do so for the reasons advanced by the Appellants. Rather, the overruling of *Wilsbach* could not have been the legislature's purpose because the act was passed more than two years before *Wilsbach* was decided.

This argument is instructive, however, in a way that cuts against the Appellants' position, because the act did apparently overrule *Allegheny Valley Bank* insofar as that case applies to first class cities. The act provides that the

> rate or rates determined for regulated industries shall be based upon taxable receipts: Provided, That the amount payable shall not exceed a percent of net income established by the city council: And provided further, That any percent of net income shall be set at the same millage or net income rates set for other businesses. All other businesses other than regulated industries shall pay at rates determined by city council which shall be applicable to taxable receipts, net income or any combination of the two . . . .

53 P.S. § 16184(a). "Regulated industry" is defined as including "[a] person subject to a tax pursuant to Article VII, VIII, IX or XV of the Tax Reform Code of 1971 . . . ." 53 P.S. § 16183. These Articles refer to the Bank Shares Tax, the Title Insurance and Trust Companies Shares Tax, the Insurance Premiums Tax, and the Mutual Thrift Institutions Tax respectively. Thus banks, as a regulated industry, are subject to different tax treatment than "non-regulated" businesses. The important point, however, is that banks are subject to the tax, "notwithstanding the contrary provision of law" established by this Court's determination in *Allegheny Valley Bank*

that the pervasive regulation of the banking industry evidences a legislative intent that banks not be subjected to local taxation. It would be anomalous indeed if beer distributors were completely exempted from the tax under the implied preemption analysis of *Wilsbach*, decided two years after the adoption of the act, while banks, which had enjoyed the benefit of the same preemption analysis, were made subject to the tax by the explicit terms of the act.

Because of the many similarities between this case and *Wilsbach*, the disparity of result is troubling. However, as this author noted in *Wilsbach*, "the difficulty arises out of the necessity of discerning legislative intent[.] [I]f the result in any particular case proves flawed or unworkable, we may trust the General Assembly to correct our erroneous interpretation."

For the foregoing reasons, the order of the Commonwealth Court is affirmed.

NEWMAN, J., did not participate in the consideration or decision of this case.