**PLEASANT HILLS CONSTRUCTION COMPANY, INC. and Gary C. Hartman,**

v.

**PUBLIC AUDITORIUM AUTHORITY OF PITTSBURGH and Allegheny County Limbach Company, Pittsburgh Pirates Baseball Club and Dick Corporation/Barton Malow Company.**

**Appeal of Public Auditorium Authority of Pittsburgh.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2000.
Decided Aug. 10, 2001.

---

Arnd N. von Waldow, Pittsburgh, for appellant.

Gerard J. Cipriani, Pittsburgh, for appellant.

Charles B. Gibbons, Pittsburgh, for amicus curiae, Pittsburg Steelers Sports, Inc.

Before DOYLE, President Judge,
COLINS, J., SMITH, J., PELLEGRINI,
J., and FRIEDMAN, J.

DOYLE, President Judge.

The Sports and Exhibition Authority of Pittsburgh (SEA) (formerly the Public Auditorium Authority of Pittsburgh & Allegheny County) appeals from an order of the Court of Common Pleas of Allegheny County, which granted in part the request for preliminary injunctive relief sought by Pleasant Hills Construction Company and Gary C. Hartman. The Court preliminarily enjoined SEA from entering into any future contracts for any construction pro-

**1.** Act of May 1, 1913, P.L. 155, *as amended,* 53 P.S. § 1003.

**2.** Act of July 29, 1953, P.L. 1034, *as amended,* 53 P.S. §§ 23841–23857.

jects not in compliance with the bidding requirements of what is commonly known as the Separations Act [1], and certain provisions of the Public Auditorium Authorities Law (the Law).[2]

This appeal involves a dispute over a plumbing contract for SEA's PNC Park Construction Project (the Stadium Project), which will be the new sports stadium for the Pittsburgh Pirates baseball team. The Stadium Project is being developed as a Redevelopment Assistance Capital Project, financed by both public and private monies.[3] In order to understand the facts underlying this dispute, it is important to understand the various bidding statutes involved in this matter.

Section 11 of the Law, 53 P.S. § 23851(A), establishes the basic principle that an authority's construction project "shall be done only under contract or contracts to be entered into by the Authority with the lowest responsible bidder. . . ." This statute is amplified by Section 1 of the Separations Act, which provides that, with regard to the construction of any public building:

> it shall be the duty of the architect[,] engineer or any other person ... to prepare specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into such contracts ... to receive separate bids upon each of the said branches of work and to award the contract to the lowest responsible bidder for each of said branches.

53 P.S. § 1003.

In 1999, the General Assembly passed two acts which are central to this appeal:

**3.** The construction of PNC Park is being managed and conducted by Dick Corporation/Barton Malow Company, referred to in certain bid documents, quoted *infra,* as "the DCM." Dick Corporation is a defendant in this lawsuit.

(1) the Capital Facilities Debt Enabling Act (Act 1), Act of February 9, 1999, P.L. 1, 72 P.S. §§ 3919.101-3919.5102; [4] and (2) the Capital Budget Project Itemization Act for 1999-2000 [5], Act No. 35, approved by the Governor on June 25, 1999 (Act 35). (Act 1 and Act 35 are collectively referred to as the 1999 Legislation.)

Act 1 is designed to provide for state funding of redevelopment assistance capital projects, including sports stadiums. With regard to bidding on such projects, Section 318(f) of Act 1, 72 P.S. § 3919.318(f), created the following requirement:

(f) **Bids.**—The solicitation of a minimum of three written bids is required for all general contracted work in redevelopment assistance capital projects.

Furthermore, in Section 22 of Act 35, the General Assembly pertinently provided:

**Section 22. Redevelopment assistance capital projects**

(a) **Requirements for.**—

(1) Notwithstanding any other law to the contrary, the requirements of section 318 of the [Debt Enabling Act] . . . shall provide the sole and exclusive requirements for bidding for the construction or renovation of a redevelopment assistance capital project authorized in a capital budget itemization act on or before the effective date of this act.

. . . .

(b) **Construction.**—Nothing in this section shall be construed to override or abrogate any provision of the act of March 3, 1978 (P.L. 6, No.3), known as the Steel Products Procurement Act.

The facts and procedural history of this case are summarized as follows. SEA solicited bids for plumbing and HVAC on the Stadium Project. The bidding process included a procedure to pre-qualify potential contractors, and the bid package specifically provided that the contracts for the Stadium Project would be awarded to the lowest responsible bidder. Pleasant Hills Construction Co., Inc., a business located in Allegheny County that constructs plumbing systems, participated in the pre-qualification process and was deemed qualified to bid on the Stadium Project as a prime contractor.

Two relevant addenda to the bid package were subsequently issued by SEA. The first addendum, issued on July 9, 1999, asked pre-qualified contractors to submit separate bids for the plumbing and HVAC contract, and a joint bid for plumbing and HVAC work. Another addendum to the bid package was issued on July 19, 1999,[6] which provided:

The procedures to be used to competitively bid construction work on the PNC Park project under the provisions of Act One of 1999 [Act 1] and Senate Bill 572 [Act 35], as adopted by the Owner, are made a part of this bid package.

(Addendum No. 4, Exhibit C to the Second Amended Complaint.) The July 19th addendum also stated:

The DCM may negotiate scope, price, and terms and conditions to achieve a contract that is in the best interests of the Project. . . . DCM will not adjust the scope, price or terms and conditions

---

**4.** *See Giordano v. Ridge,* 737 A.2d 350 (Pa. Cmwlth.1999), *aff'd,* 562 Pa. 154, 753 A.2d 1277 (2000), upholding the constitutionality of the Debt Enabling Act.

**5.** The parties refer to this Act in their briefs as Senate Bill 572 of 1999.

**6.** At about the same time it issued the July 19th addendum, SEA also passed a resolution, Resolution 2423, authorizing the use of construction bid procedures consistent with Act 1 and Act 35.

without affording at least three bidders the opportunity to compete....

....

The DCM will recommend ... the award of the contract that is in the best interests of the DCM, the Project and the Developer taking into account price and other factors....

On August 5, 1999, Pleasant Hills submitted a bid for the plumbing project in the amount of $6,154,700.00. This was the lowest plumbing bid submitted for the Stadium Project. Pleasant Hills did not submit a bid for HVAC work.

Limbach Company also submitted a bid for the plumbing contract, as well as a bid for a combined plumbing/HVAC contract. Limbach's bid for the plumbing contract was $8,100,000.00, substantially more than Pleasant Hills' bid for the same work, and Limbach's combined plumbing/HVAC contract bid was $15,400,000.00.

On August 16, 1999, SEA awarded the plumbing and HVAC contracts to Limbach for the amount of its combined bid. Approximately four weeks later, on September 17, 1999, Pleasant Hills and its President, Gary C. Hartman (who is also a taxpayer and Allegheny County resident), brought an equity action in the Common Pleas Court seeking to have the award to Limbach set aside.

Pleasant Hills and Hartman moved for a preliminary injunction asking the Common Pleas Court to enjoin SEA from contracting with any other entity for the plumbing work. They argued, *inter alia*, that SEA was required to award the plumbing to the lowest responsible bidder, as required by the Law, and that the Separations Act mandates that SEA enter into separate contracts for plumbing and heating work. In response, SEA argued that (1) the award of the contract was sanctioned by the 1999 Legislation, (2) Pleasant Hills and

Hartman lacked standing to sue, and (3) they were estopped from seeking injunctive relief because they had notice of changes to the bid procedures on July 19, 1999, and did not diligently file suit.

A hearing on the preliminary injunction motion was conducted on November 19, 1999, and, thereafter, the Common Pleas Court entered an order granting in part and denying in part the motion. The order provides, in pertinent part:

1. The captioned action in equity is DISMISSED as to the Corporate Plaintiff, Pleasant Hills ..., the 'disappointed' but 'responsible' and lowest bidder and, said Corporate Plaintiff's Petition is DENIED....

2. The petition of the Taxpayer, Gary C. Hartman, is GRANTED in part, and [SEA] *is hereby enjoined preliminarily from hereafter awarding any contract for any construction project or modifying any existing contract without first complying with the Separations Act ... and the requirement that [SEA] contract only with the 'lowest responsible bidder.'* Plaintiff's request for a mandatory injunction nullifying the current plumbing contract between [SEA] and Limbach and directing [SEA] to enter into a contract with the Corporate Plaintiff is DENIED.

3. The preliminary injunction ... is to become effective upon the posting of a nominal bond in the amount of $1.00....

(Common Pleas Courts order, dated December 8, 1999.) (Emphasis added.) The Court's decision to grant injunctive relief was based on its conclusion that Act 1 and Act 35 were not intended to exempt SEA from the bidding requirements of the Law or the Separations Act. This appeal followed

On appeal to this Court, SEA raises the following contentions: (1) Act 1 and Act 35 exempt the Stadium Project from the Sep-

arations Act and the Law; (2) Pleasant Hills and Hartman are estopped from seeking injunctive relief; (3) Hartman did not have standing to challenge the award of the contract to Limbach; (4) all the elements required for a preliminary injunction were not established; (5) the Common Pleas Court granted relief that was not demanded by Hartman; (6) the Court granted the motion without allowing the co-defendant, Dick Corporation, an opportunity to be heard; and (7) the Court erred in requiring a nominal bond.

■ The standard of review for this Court reviewing either the grant or refusal of a preliminary injunction requires consideration only of whether there were any apparently reasonable grounds for the action of the lower court. *Wilkes-Barre Independent Company v. Newspaper Guild, Local No. 120*, 455 Pa. 287, 314 A.2d 251 (1974).

Because they impact on the right of Pleasant Hills and Hartman to seek relief in the first instance, we will first consider SEA's estoppel and standing arguments.

■ Regarding estoppel, SEA contends that on July 19, 1999, it issued an addendum and a resolution putting Pleasant Hills and Hartman on notice that it would apply Act 1 and Act 35 and that the plumbing contract may not be awarded to the lowest responsible bidder. The complaint in this matter was filed approximately eight weeks after such notice was issued, and during the preceding eight weeks SEA expended funds on the Stadium Project. We cannot agree with SEA's argument.

■ The Common Pleas Court determined that the first time that Pleasant Hills and Hartman were placed on notice that a higher bid was accepted by SEA was sometime after August 16, 1999, which was about one month before the complaint

was filed, and the Court found that SEA was not prejudiced by that short delay. Plainly, a one-month delay in filing a complaint is not excessive and, under these facts, we do not believe that Pleasant Hills and Hartman were dilatory in bringing this action. Furthermore, we agree with the Common Pleas Court's statement, in support of its rejection of SEA's estoppel argument, that "justice does not permit a wrongdoer to escape the consequences of his illegal conduct merely by first informing the victim of his intent to commit the illegal act in question." (Common Pleas Court Opinion, dated January 27, 2000, at 22.)

■ SEA also argues that Hartman does not have standing to bring this action, reasoning that Hartman is merely a surrogate for Pleasant Hills and, as such, is a mere disappointed bidder having no standing. However, it is settled law that to have standing, a party need only have an interest in the outcome of the suit, which surpasses the common interest of all citizens in procuring obedience to the law. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). Specifically, the party is required to show that he or she has (1) a substantial interest in the subject matter of the litigation; (2) a direct interest in the litigation; and (3) the interest must be immediate and not a remote consequence. *Wm. Penn; Empire Coal Mining and Development v. Department of Environmental Resources*, 154 Pa.Cmwlth. 296, 623 A.2d 897, *petition for allowance of appeal denied*, 535 Pa. 625, 629 A.2d 1384 (1993). A mere disappointed bidder to a public contract generally lacks standing to challenge the award because, in the absence of a property interest to receive the contract, that bidder has suffered no injury that would entitle him to redress. *J.P. Mascaro & Sons, Inc. v. Bristol*, 95 Pa.Cmwlth. 376, 505 A.2d

1071 (1986). To have standing, the bidder must also be an aggrieved taxpayer of the jurisdiction funding the contract, *C.O. Falter Construction v. Towanda Municipal Authority*, 149 Pa.Cmwlth. 74, 614 A.2d 328 (1992), and standing to challenge the improper award of a public contract is not defeated where the complaining taxpayer is also a disappointed bidder. *American Totalisator Company, Inc. v. Seligman*, 27 Pa.Cmwlth. 639, 367 A.2d 756 (1976).

The facts stipulated to by the parties and averred in the complaint demonstrate that Hartman is a taxpayer of Allegheny County and a disappointed bidder who has a direct, immediate, and substantial interest in this matter. The parties stipulated that "Hartman pay[s] property, income, and/or sales taxes in and/or to Allegheny County" (Stipulation of Facts ¶ 4), and Hartman specifically averred in the Complaint that he lives and owns property in Allegheny County. (Third Amended Complaint at ¶ 2.) Hartman also alleged in the Complaint that the award of the plumbing contract to another firm harmed Allegheny County taxpayers and that Hartman suffered damages and irreparable harm as a result of SEA's actions. (Third Amended Complaint at ¶¶ 58–61.) The parties' stipulations show that the award of the contract to Limbach instead of Pleasant Hills will increase the cost of the plumbing work by $1,785,300.00, and that Pleasant Hills submitted the lowest bid for the plumbing project. (Stipulations of Fact at ¶ 23 and ¶ 25.) Therefore, in light of the above, we conclude that Hartman had standing in this matter.

■ Turning to the issue at the heart of this appeal, SEA contends that the 1999 Legislation has "repealed" the requirements of the Law and the Separations Act for redevelopment capital projects, such as the Stadium Project, (SEA's brief at 22.), and, of great significance, acknowledged before the Common Pleas Court that, but for the 1999 Legislation, it would have been required to comply with the Law and the Separations Act and enter into a contract with Pleasant Hills. (Common Pleas Court opinion, dated January 27, 2000, at 5-6.)

SEA's argument relies on the language in Section 22 of Act 35, which provides that *"notwithstanding any other law to the contrary,* the requirements of section 318 of [Act 1] ... shall provide the sole and exclusive requirements for *bidding* for the construction or renovation of a redevelopment assistance capital project...."* (Emphasis added.) It argues that the "notwithstanding" language indicates the Legislature's intent to preempt prior bidding and contracting laws for redevelopment projects. Thus, in the wake of Section 22 of Act 35, SEA believes the only requirements governing the entire contracting process for such projects are (1) the mandate in Section 318(f) of Act 1, 72 P.S. § 3919.318, for the solicitation of a minimum of three written bids for all general contract work in redevelopment assistance capital projects, and (2) the demand in Section 22(b) of Act 35 of adherence to the Steel Products Procurement Act.

The Common Pleas Court, however, rejected SEA's analysis of the 1999 Acts, determining that the word "bids" in Section 318(f) of Act 1 and "bidding" in Section 22 of Act 35 do not mean the complete bidding/contracting process, but rather refer only to the solicitation part of that process, *i.e.,* the "bidding" process. The Court explained that the import of Section 22 of Act 35 and Section 318(f) of Act 1 is "that the usual bidding process has been modified to add a requirement that a minimum number of written bids be solicited for 'all general contract work' in projects such as [the Stadium Project]." (Common Pleas Court opinion, dated January 27,

2000, at 13.) We agree with the Common Pleas Court's analysis.[7]

■ There is no explicit language in either Section 22 of Act 35 or Section 318 of Act 1 indicating that the Legislature intended to repeal the Law or the Separations Act with regard to redevelopment assistance capital projects or to exempt such projects from them. Implied repeals of statutes are not favored by the law, *In re Delinquent Tax Sale,* 83 Pa.Cmwlth. 411, 477 A.2d 603 (1984), and there is even a presumption against an implied repeal. *Cedarbrook Realty, Inc. v. Nahill,* 35 Pa. Cmwlth. 352, 387 A.2d 127 (1978), *aff'd,* 484 Pa. 441, 399 A.2d 374 (1979). Further, statutes will not be presumed to make changes in prior existing law beyond that which is necessary to carry out the purposes of the new legislation. *Public Parking Authority of Pittsburgh,* 366 Pa. 10, 76 A.2d 620 (1950). Only where a statute sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for the former statute on the same subject, will the former statute be deemed to be repealed by implication. *Licensed Beverage Association of Philadelphia v. Board of Education of the School District of Philadelphia,* 669 A.2d 447 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 548 Pa. 650, 695 A.2d 788 (1997).

Section 22 of Act 35 states that Section 318 "shall provide the sole and exclusive requirements for *bidding*" on redevelopment assistance projects, and Section 318(f) of Act 1 provides only that "the solicitation of a minimum of three written bids is required for all general contracted work in redevelopment assistance capital projects." (Emphasis added.) The plain language of Section 318(f) refers only to the solicitation of bids, and it sets out a rule that mandates a minimum number of bids for contracts relating to redevelopment assistance capital projects. The 1999 Legislation is silent regarding an Authority's authority or obligation to *accept* the lowest responsible bid, or its obligation to enter into separate contracts for certain types of work. Accordingly, we cannot conclude that Act 1 and Act 35 set up a general or exclusive system covering the same subject matter as the Law and the Separations Act.

■ Further, it is not reasonable to attribute a meaning to the word "bid" in Section 318(f) beyond its common usage: a submitted price at which one will perform work or supply goods. *Black's Law Dictionary* 154 (7th ed. 1999). Additionally, there is no basis in the 1999 Acts to support SEA's view that the scope of the word "bidding" in Section 22 of Act 35 should be broadly interpreted to include the award of a contract. Hence, we believe that Section 22 of Act 35 and Section 318(f) relate solely to the solicitation of bids and cannot be reasonably construed to encompass the entire public contracting process.

---

**7.** SEA observes in its brief that another judge of the Court of Common Pleas of Allegheny County reached a different conclusion in *Reed v. Public Auditorium Authority of Pittsburgh,* No. GD99-12217, (C.P. Pa., filed September 24, 1999), a case involving the same bidding procedures at issue here. The opinion in that case, written in support of an order denying a special injunction prior to an evidentiary hearing, stated that the plaintiff failed to establish a clear right to relief because the bidding procedures were authorized by the Legislature. However, the decision in *Reed* contains little analysis and, unlike the decision in the instant case, was written without the development of an evidentiary record. Therefore, it is not persuasive in the instant case.

The *Reed* decision was appealed to this Court (No. 2052 C.D. 1999); however, the appeal was discontinued on November 12, 1999.

The "notwithstanding any other law to the contrary" clause in Section 22 of Act 35 could arguably nullify a conflicting law that permitted SEA to award a contract based on less than three bids. *See City of Philadelphia v. Clement & Muller, Inc.*, 552 Pa. 317, 715 A.2d 397 (1998) (language in statute allowing the imposition of a tax, notwithstanding a contrary provision of law, explicitly authorized tax collection regardless of any contrary case law or statute). However, because the Law and the Separations Act *are not contrary* to the bid solicitation rule in Section 318(f) of Act 1, but rather govern completely different elements of the contracting process, there is no contradiction between the statutes. *See Public Parking Authority of Pittsburgh* (Separations Act was not repealed by the The Parking Authorities Act, Act of June 5, 1947, P.L. 485, because the acts were not irreconcilable).

We also note that the parties' stipulated that, prior to enactment, Act 35 contained language that provided, among other things, that, with the exception of Section 318 of Act 1 and the Steel Products Procurement Act, "[n]o other law, code, or regulation relating to bidding, procurement, preparation of bid specifications, or contracting for construction or renovation shall apply." (Stipulation of Facts at ¶ 16.) The parties agreed in the stipulation that this exemption language was deleted by the Legislature from the version of the legislation that was ultimately enacted into law as Act 35. *Id.* The General Assembly's decision to delete this language from the final version of the Act lends additional support to our view that the Legislature did not intend to repeal or exempt redevelopment assistance projects from other laws relating to public contracts.

Therefore, for all the above reasons, we find that the 1999 Legislation did not repeal or exempt SEA from complying with the Law and the Separations Act.

Next, SEA argues that Hartman failed to establish all of the elements for the grant of a preliminary injunction. As we explained in *Committee of Seventy v. Albert*, 33 Pa.Cmwlth. 44, 381 A.2d 188, 190 (1977) (citations omitted):

> Three criteria have been established for the granting of a preliminary injunction, which, as a harsh and extraordinary remedy, is to be granted only when and if each criteria has been fully and completely established. .... They are: (1) the preliminary injunction must be necessary to prevent immediate and irreparable harm which could not be compensated for by damages; (2) greater injury would result from the denial of the preliminary injunction than from the granting of it; and (3) it would operate to restore the parties to the status quo as it existed prior to the alleged wrongful conduct.

In addition to the aforementioned criteria, the plaintiff must show that the alleged wrong is manifest and that the right to relief is clear. *T.W. Phillips Gas and Oil Company v. Peoples Natural Gas Company*, 89 Pa.Cmwlth. 377, 492 A.2d 776 (1985). A preliminary injunction may be granted only where the moving party establishes all of the elements necessary to satisfy the burden of proof. *Id.*

In this appeal we first note that a violation of an express provision of a statute is per se irreparable harm for purposes of a preliminary injunction. *Council 13, American Federation of State, County and Municipal Employees, AFL-CIO v. Casey*, 141 Pa.Cmwlth. 199, 595 A.2d 670 (1991). And, a moving party need not prove an absolute right to relief in order to obtain a preliminary injunction; instead, if the other elements necessary for a preliminary injunction exist, and substantial legal

questions are raised by the underlying legal claim, the party's "right to relief is clear." *T.W. Phillips* at 780–781. In light of our preceding discussion, Hartman has raised a substantial legal question as to whether SEA violated two statutes: the Law and the Separations Act. Thus, Hartman demonstrated both irreparable harm and a clear right to relief.

■ Furthermore, SEA's noncompliance with the Law and the Separations Act is, in our view, a manifest wrong, and the injunction, which applies to future contracts, is reasonably suited to abate that wrong.

■ Regarding the question of whether greater injury would result from the denial of the preliminary injunction rather than from the grant of it, the Common Pleas Court properly and equitably balanced the injury that could flow from its decision to grant Hartman injunctive relief. The Court protected SEA from harm by denying Pleasant Hill's request to have the plumbing contract with Limbach nullified and by granting Hartman prospective relief only. In our view, because the Common Pleas Court limited the scope of its injunction, we believe that greater injury would result from the denial of the preliminary injunction than from granting it.

■ Furthermore, the injunction also restored the *status quo ante*. The Court correctly reasoned as follows:

The *status quo ante* ... was restored as much as possible by the preliminary injunction, which requires the [SEA] and its successors not to violate the [Law and the Separations Act] in the future. The [SEA] had the duty to honor the [Law and the Separations Act] before it awarded the plumbing contract in question, and the Court Order 'restored' that duty with regard to contracts entered

into by the [SEA] after the date of the Order.

(Common Pleas Court Opinion, dated January 27, 2000, at 29.)

Accordingly, we conclude that Hartman satisfied all of the elements required for the grant of a preliminary injunction.

■ SEA further contends that the Common Pleas Court granted injunctive relief never sought by Hartman. In his Complaint, however, Hartman included a general prayer for relief, asking the Court to grant "other and further relief as the Court deems just and proper under the circumstances." (Third Amended Complaint at ¶ 65.) The motion for a preliminary injunction contains a similar general prayer for relief, requesting the Court to "provide such other equitable relief as is just and appropriate under the circumstances." (Motion for Preliminary Injunction at 3.)

■ Where a complaint in equity includes such a prayer for general relief, a court may grant appropriate relief that conforms to the case made by the pleadings, regardless of the fact that it is not the relief asked for by the special prayer. *Ratkovich v. Randell Homes, Inc.*, 403 Pa. 63, 169 A.2d 65 (1961); *Meth v. Meth*, 360 Pa. 623, 62 A.2d 848 (1949). Because the Common Pleas Court had the authority to grant Hartman relief in accord with his general prayer for relief, it was not bound by the specific relief requested. SEA's argument must, therefore, fail.

■ Next, SEA argues that the Common Pleas Court erred by granting Hartman a preliminary injunction without affording co-defendant, Dick Corporation, an opportunity to be heard. SEA asserts that, although Dick Corporation was joined as a defendant in the Third Amended Complaint, the complaint was not served on Dick Corporation before the Common

Pleas Court issued its ruling. Contrary to this argument, a party may not claim standing to vindicate the rights of a third party, such as Dick Corporation, who has the opportunity be heard. *Mid–Atlantic Power Supply Ass. v. Pennsylvania Public Utility Commission*, 746 A.2d 1196 (Pa. Cmwlth.2000). Our review of the record does not indicate that Dick Corporation has taken any action to protect its rights in this matter. We hold that SEA does not have standing to protect the Dick Corporation's rights to due process. Additionally, Hartman's failure to timely serve Dick Corporation would not deprive the Common Pleas Court of jurisdiction over SEA, which was properly served with the complaint.

Last, SEA contends that the Common Pleas Court erred in requiring Hartman to post only a nominal bond of $1.00. But, trial courts determine bond amounts on a case-by-case basis; of course, the bond should be sufficient to cover damages that are reasonably foreseeable. *Greene County Citizens United v. Green County Solid Waste Authority*, 161 Pa. Cmwlth. 330, 636 A.2d 1278 (1994). Here, it is important to note that the Common Pleas Court's injunction order did not nullify the contract between SEA and Limbach, but rather limited the impact of the injunction to future contracts only. Considering that the impact of the Court's order on *future* contracts is uncertain, and that the Court's order maintains the existing plumbing contract between SEA and Limbach, the imposition of a nominal bond in this circumstance was not an abuse of the Court's discretion.[8] We note, however, that if the facts change and the bond becomes inadequate, SEA may petition the Common Pleas Court to increase the amount of the bond. *See e.g. Dunlap v. Larkin*, 342 Pa.Super. 594, 493 A.2d 750 (1985); 5 Goodrich-Amram § 1531(b):10.

Accordingly, the Common Pleas Court's order is affirmed.

Judge McGINLEY did not participate in the decision in this case.

### *ORDER*

**NOW**, August 10, 2001, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

8. The opinion of the trial court, dated December 8, 1999, concludes as follows: "It is too late to provide [the corporate plaintiff, Pleas- ant Hills Construction Co.] preliminary relief." (See p. 12 of opinion.)