784 A.2d 1277

**PLEASANT HILLS CONSTRUCTION COMPANY, INC. and Gary C. Hartman,**

**v.**

**PUBLIC AUDITORIUM AUTHORITY of Pittsburgh and Allegheny County, Limbach Company, Pittsburgh Pirates Baseball Club and Dick Corporation/ Barton Malow Company,**

**Appeal of Public Auditorium Authority of Pittsburgh.**

Supreme Court of Pennsylvania.

Submitted Nov. 20, 2001.
Decided Nov. 29, 2001.

James Michael Doerfler, Pittsburgh, for Public Auditorium Auth. of Pittsburgh and Allegheny County.

John Michael Klutch, Gerard J. Cipriani, Pittsburgh, for Pleasant Hills Const. et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Mr. Justice NIGRO.

This Court granted the Petition for Allowance of Appeal of Appellant Sports and Exhibition Authority of Pittsburgh and Allegheny County ("SEA," formerly the Public Auditorium Authority of Pittsburgh and Allegheny County) to resolve the issue of the proper bidding procedures to be employed in the construction of Redevelopment Assistance Capital Projects authorized in a capital budget itemization act on or before June 25, 1999. ("RACPs"). For the following reasons, we hold that the only requirements for bidding on RACPs are those set forth in Section 318 of the Capital Facilities Debt Enabling Act ("CFDEA"), Act of February 9, 1999 (P.L. 1, No. 1), 72 P.S. §§ 3919.101–3919.5102.

Under the CFDEA, the Commonwealth of Pennsylvania is authorized to make Redevelopment Assistance Capital Grants for large economic development projects in the Commonwealth. Chapter 5 of the CFDEA addresses sports facility financing and specifically provides for grants of Commonwealth funds to a municipality or authority for the purpose of renovating or constructing sports facilities. *See* 72 P.S. §§ 3919.591–3919.510.

SEA obtained public funds under the CFDEA for the construction of PNC Park, the home of the Pittsburgh Pirates baseball team, and the project (the "Stadium Project") was

designated an RACP.[1] SEA solicited bids for the plumbing and heating/ventilation/air-conditioning ("HVAC") portions of the Stadium Project, directing contractors to submit separate bids for plumbing and HVAC as well as a joint bid for the two types of work. In a July 19, 1999 addendum to the bid package, SEA informed potential bidders that:

> The procedures to be used to competitively bid construction work on the PNC Park project under the provisions of Act One of 1999 and Senate Bill 572, as adopted by [SEA] are made a part of this bid package.

R.R. 198. "Act One of 1999" refers to the CFDEA, which has only one section that addresses bidding procedures. Specifically, Section 318(f) of the CFDEA provides as follows:

> **(f) Bids.**—The solicitation of a minimum of three written bids is required for all general contracted work in redevelopment assistance capital projects.

72 P.S. § 3919.318(f). The reference in the bid package addendum to "Senate Bill 572" is a reference to the Capital Budget Project Itemization Act for 1999–2000, Act of June 25, 1999 (P.L. 237, No. 35) ("Act 35"), approved by Governor Thomas Ridge on June 25, 1999. Section 22 of Act 35 provides:

> Section 22.   Redevelopment assistance capital projects
>
> (a) Requirements for.—
>
> (1) *Notwithstanding any other law to the contrary, the requirements of section 318 of the . . . Capital Facilities Debt Enabling Act, shall provide the sole and exclusive requirements for bidding* for the construction or renovation of a redevelopment assistance capital project authorized in a capital budget itemization act on or before the effective date of this act.
>
> \* \* \* \*
>
> (b) Construction.—Nothing in this section shall be construed to override or abrogate any provision of the act of

---

1. The General Assembly authorized the use of Commonwealth funds for the Stadium Project in the Capital Budget Itemization Act for 1996–97, Act of October 10, 1997 (P.L. 392, No. 47).

March 3, 1978 (P.L. 6, No. 3), known as the Steel Products Procurement Act.

Act of June 25, 1999 (P.L. 237, No. 35), at § 22 (emphasis added.)

On August 5, 1999, in response to the bid solicitation, Appellee Pleasant Hills Construction Co., Inc. ("Pleasant Hills") submitted a $6,154,700.00 bid for the plumbing project only. A second bidder, Limbach Company, submitted both a $15,400,000.00 bid for the combined plumbing/HVAC contract and a separate $8,100,000.00 bid for the plumbing contract alone. On August 16, 1999, SEA awarded the combined plumbing/HVAC contract to Limbach.

On August 16, 1999, Pleasant Hills and its president, Gary C. Hartman, filed a Complaint in Equity with the Court of Common Pleas of Allegheny County, alleging that SEA's award of the contract to Limbach violated the Public Auditorium Authorities Law, 53 P.S. §§ 23841–23857, which requires that contracts be awarded to the lowest responsible bidder, *id.* § 23851A, and the Separations Act, 53 P.S. § 1003, which requires separate contracts for plumbing and heating work. Pleasant Hills and Hartman asked the court to enjoin SEA from contracting with any other entity for the plumbing work. In response, SEA argued, *inter alia,* that the plain language of Section 22 makes clear that the CFDEA sets forth the sole bidding procedures applicable to RACPs and that other laws regulating bidding on publicly funded projects, with the express exception of the Steel Products Procurement Act, do not apply. SEA therefore took the position that in completing the bidding on the Stadium Project, it was only required to obtain a minimum of three written bids for all general contracted work and comply with the Steel Products Procurement Act, both of which it had done.

After conducting a hearing on the injunction request, the trial court refused to nullify the SEA Limbach contract, but enjoined SEA "from hereafter awarding any contract for any construction project or modifying any existing contract without first complying with the Separations Act ..." and the

requirement that [SEA] contract only with the "lowest responsible bidder." SEA appealed to the Commonwealth Court.

On August 10, 2001, the Commonwealth Court issued a decision, affirming the trial court and specifically holding that (1) the bidding requirements for the Stadium Project were not limited to that set forth in the CFDEA, and (2) SEA was also obligated to comply with the bidding requirements in the Separations Act and the Public Auditorium Law. *Pleasant Hills Constr. Co. v. Public Auditorium Auth. of Pittsburgh,* 782 A.2d 68 (Pa.Cmwlth.2001). In reaching this conclusion, the Commonwealth Court cited the definition of "bid" in Black's Law Dictionary, and held that that the word "bidding" in Section 22 referred only to the solicitation part of the bidding process, not to the entire public contracting process. 782 A.2d at 77–79. According to the court, to conclude otherwise would permit Sections 318 and 22 to repeal by implication the bidding requirements of the Separations Act and Public Auditorium Law at least insofar as they applied to RACPs. *Id.* Noting that implied repeals are not favored by the law and are ordinarily only permitted in certain limited circumstances not present here, the court concluded that in the absence of explicit repeal language, it could not find that a repeal of the Separations Act and Public Auditorium Law had been either intended or accomplished. *Id.* The Commonwealth Court nevertheless recognized that it needed to attribute some meaning to the "notwithstanding any other law to the contrary" language in Section 22, and thus stated that the language "could arguably nullify a conflicting law that permitted SEA to award a contract based on less than three bids." *Id.* at 79.

SEA filed a Petition for Allowance of Appeal with this Court, limited to the issue of whether the Commonwealth Court erred in holding that the CFDEA did not set forth the "sole and exclusive" requirements for bidding on RACPs, and that SEA was required to comply with the bidding requirements in the Separations Act and Public Auditorium Law. We granted allocatur and now reverse.

44

■ As the foregoing makes clear, this appeal turns on the meaning of a single statutory phrase: "Notwithstanding any other law to the contrary, the requirements of section 318 of the [CFDEA] shall provide the sole and exclusive requirements for bidding for the construction or renovation of a[n RACP]." In interpreting this provision, our goal "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(c).

Here, the words of the statute are clear and unambiguous: In spite of what other laws or statutes provide regarding bidding, the sole and exclusive bidding requirements on RACPs are those set forth in Section 318 of the CFDEA, *i.e.*, solicitation of a minimum of three bids for general contract work and compliance with the Steel Products Procurement Act. Nevertheless, the Commonwealth Court, under the guise of "statutory interpretation," took it upon itself to rewrite the statute, essentially replacing the word "bidding" with the phrase "the solicitation of bids." It then "interpreted" Section 22 to state that Section 318 provides the sole and exclusive requirements for only the *solicitation of bids*, not the whole bidding process, which begins with bid solicitation, but also includes bid acceptance and evaluation, and culminates in the awarding of contracts to successful bidders. We simply cannot agree with this conclusion. Had the General Assembly intended to communicate that Section 318 provides the "sole and exclusive" requirements for *soliciting* bids, it seems logical that it would have used some form of the word "solicit" in Section 22. In drafting Section 22 and cross-referencing Section 318, the General Assembly was undoubtedly aware of the distinction between Section 318(f)'s reference to the "solicitation of . . . bids" and the term "bidding" in Section 22, and intentionally omitted any reference to "solicitation" in Section 22. Accordingly, we conclude that the General Assembly did not intend "bidding" to mean only bid solicitation, but rather meant for the word to encompass the whole bidding process.

This interpretation is consistent with the General Assembly's use of the word "bidding" in the Commonwealth Procurement Code. 62 Pa.C.S. §§ 101, *et seq.* Among other things, the Procurement Code sets forth "competitive sealed bidding" procedures by which Commonwealth agency contracts are to be awarded. *See* 62 Pa.C.S. § 511. Those procedures, contained in a section specifically entitled "Competitive Sealed Bidding," cover not only the solicitation of bids, including the "invitation for bids" and public notice, but also the physical opening of bids, bid evaluation, and perhaps most notably, the award of contracts to the "lowest responsible and responsive bidder." 62 Pa.C.S. § 512. Given this broad use of "bidding" in the Procurement Code to mean the whole bidding process, we cannot conclude, as the Commonwealth Court did, that a more narrow definition of "bid" controls the construction of the word "bidding" in Section 22.

Interpreting "bidding" to encompass the whole bidding process is also the only way to give meaning to Section 22's pointed retention of the Steel Products Procurement Act's applicability to RACPs. *See* 1 Pa.C.S. § 1921(a) ("Every statute, if possible, is to be construed to give effect to all its provisions.") As noted above, Section 22(b) specifically states that "[n]othing in this section shall be construed to override or abrogate any provision of the ... Steel Products Procurement Act." Importantly, the Steel Products Procurement Act applies to the procurement of steel, but contains no requirements regarding the *solicitation* of bids. *See* 53 P.S. § 1003. Consequently, if, as the Commonwealth Court held, Section 22 in no way affected the application of laws regarding topics other than the solicitation of bids, then there was absolutely no reason for the General Assembly to expressly retain the applicability of the Steel Products Procurement Act to RACPs. Because each word in a statute is to be given meaning and not to be treated as surplusage, *Commonwealth v. Lassiter*, 554 Pa. 586, 722 A.2d 657, 661 (1998), the Commonwealth Court erred in interpreting Section 22 in such a way that renders its reference to the Steel Products Procure-

ment Act to be surplusage.[2]

██ The Commonwealth Court expressed concern that interpreting Section 22 as we do—to exempt RACPs from other, pre-existing bidding laws—would result in an impermissible "implied repeal" of such formerly applicable laws. However, as Section 22 explicitly states that it shall apply "notwithstanding any law to the contrary," the limited repeal effected by Section 22 is not implicit. In *City of Philadelphia v. Clement & Muller, Inc.*, 552 Pa. 317, 715 A.2d 397 (1998), we considered the effect of a virtually identical "notwithstanding" clause and held that the General Assembly's intent was "explicit." *Id.* at 399. At issue in *Clement & Muller* was a provision in the First Class City Business Tax Reform Act, 53 P.S. § 16184(a), which stated in pertinent part: "*Notwithstanding a contrary provision of law of the Commonwealth,* ... every person engaging in any business in a city of the first class ... shall pay an annual tax at the ... rates specified by the city council...." *Id.* at 399 (quoting 53 P.S. § 16184(a)) (emphasis in original). In rejecting appellants' argument that the "notwithstanding" clause did not explicitly pre-empt other Commonwealth laws, we stated that "[t]he meaning of the emphasized introductory language is straightforward: *regardless of what any other law provides,* first class cities are authorized by this act to collect a tax from every person engaging in any business within the city." *Id.* (emphasis added). As we explained, "[w]here the legislature has expressed its intention explicitly, ... that intention must be given effect." *Id.* Likewise, in the instant case, the "notwithstanding" clause at issue is equally clear: regardless of what any other laws provide, the only bidding requirements for RACPs are those set forth

**2.** In addition, the Separations Act specifically requires compliance with the Steel Products Procurement Act. *See* 53 Pa. C.S. § 1003 ("Every contract for the construction, reconstruction, alteration, repair, improvement or maintenance of public works shall comply with the provisions of the ... 'Steel Products Procurement Act.' ") Accordingly, unless Section 22 renders the Separations Act's bidding requirements no longer applicable to RACPs, the requirements of the Steel Products Procurement Act would have been applicable to RACPs by virtue of the Separations Act and, again, it would have been superfluous to reaffirm its application in Section 22.

in Section 318(f) and the Steel Products Procurement Act. Accordingly, the Commonwealth Court's concerns regarding the law's disfavor of implied repeals were misplaced.

The Commonwealth Court claimed to find support for its position in the legislative history to Act 35. However, that legislative history, which should not have been consulted in the absence of any statutory ambiguity, *see* 1 Pa.C.S. § 1921(7), is, in any event, inconclusive. As the Commonwealth Court pointed out, an earlier draft of Act 35 contained not only the current Section 22, but also a section specific to sports facility construction projects, which stated that with the exception of Section 318 and the Steel Products Procurement Act, "[n]o other law, code or regulation relating to bidding, procurement, preparation of bid specifications or contracting for construction or renovation shall apply." According to the Commonwealth Court, "the General Assembly's decision to delete this language from the final version of the Act lends additional support to our view that the Legislature did not intend to repeal or exempt redevelopment assistance projects from other laws relating to public contracts." 782 A.2d at 79. We do not agree. Because the deleted language was specific to sports facilities, it is just as likely, if not more likely, that the General Assembly deleted it because it was duplicative of Section 22 and, therefore, unnecessary. Accordingly, we assign no probative value to the legislative history on which the Commonwealth Court relied.[3]

Finally, we feel compelled to point out that the interpretation of Section 22 adopted by the Commonwealth Court is, in practice, confusing and unworkable. If, in fact, Section 22 "repeals" only pre-existing laws relating to bid "solicitation," RACPs would be relieved from certain requirements of the

3. It is also worth noting that the Commonwealth's Office of the Budget, the government office charged with responsibility for administering the Redevelopment Assistance Capital Projects grant program and specifically for reviewing RACPs "at regular intervals ... to ensure financial and program compliance," 72 P S. § 3919.318(g), has interpreted Section 22 as explicitly providing that RACPs need only comply with Section 318(f) and not other bidding laws.

Separations Act and not others. The Separations Act provides in relevant part:

**Separate specifications for plumbing, heating, ventilating and electrical work; separate bids and contracts**

Hereafter, in the preparation of specifications for the erection, construction, and alteration of any public building, when the entire cost of such work shall exceed four thousand dollars, it shall be the duty of the architect engineer, or other person preparing such specifications, to prepare separate specifications for the plumbing, heating, ventilating, and electrical work; and it shall be the duty of the person or persons authorized to enter into contracts for the erection, construction, or alteration of such public buildings to receive separate bids upon each of the said branches of work, and to award the contract for the same to the lowest responsible bidder for each of said branches.

53 P.S. § 1003. Thus, under that Act, in order to achieve the ultimate goal of awarding separate contracts for plumbing, heating, ventilating and electrical work, the General Assembly set forth specific directives regarding the solicitation of bids, i.e., how bid specifications shall be prepared and how bids shall be submitted. Accordingly, construing Section 318 to provide the "sole and exclusive" requirement for the "solicitation of bids" would nullify certain necessary portions of the Separations Act, leaving the requirement that separate contracts be awarded, but providing no procedures pursuant to which that goal is to be accomplished. This result is obviously illogical and cannot be what the General Assembly intended.[4]

4. The Commonwealth Court may have recognized the difficulty of parsing out pre-existing laws regarding bid solicitation from those regarding other aspects of the bidding process. Although it interpreted "bidding" in Section 22 to mean the "solicitation of bids," it seemed to disavow the natural consequence of this construction, i.e., that Section 318(f) then provides the "sole and exclusive" requirement regarding the "solicitation of bids." Instead, the Commonwealth Court stated that it "agree[s] ... with the analysis" of the trial court, 782 A.2d at 78, that "the apparent meaning of section 22 and section 318(f) is that the usual bidding process has been modified to *add* a requirement that minimum number of written bids be solicited for 'all general contract work' in [RACPs]." *Pleasant Hills Constr. Co., Inc. v. Public Auditorium Auth. of Pittsburgh,* 45 Pa. D & C.4th 449, 461 (C.C.P. 2000)(emphasis added).

For the foregoing reasons, the order of the Commonwealth Court is reversed.

It went on to say that the " 'notwithstanding any other law to the contrary' clause in Section 22 of Act 35 could arguably nullify a conflicting law that permitted SEA to award a contract based on less than three bids." The court did not, however, outwardly acknowledge that, even using its construction of "bidding," the "notwithstanding" clause would nullify laws regarding other aspects of the bid solicitation process as well.