595 A.2d 670

COUNCIL 13, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, by its trustee ad litem Edward J. KELLER et al., Petitioners,

v.

Robert P. CASEY, Individually and in his capacity as Governor of the Commonwealth of Pennsylvania et al., Respondents.

Commonwealth Court of Pennsylvania.

Heard July 9, 1991.

Decided July 10, 1991.

Designated as Opinion to be Reported
July 22, 1991.

Alaine S. Williams, Philadelphia, for petitioners.

Richard Spiegelman and Frank Fisher, Harrisburg, for respondents.

Bruce Ludwig, Philadelphia, for intervenor.

CRAIG, President Judge.

Petitioners, a state employees' union and two representative members (AFSCME), has brought this original jurisdiction petition for review in the nature of mandamus and equity proceedings, seeking a peremptory mandamus order or preliminary injunction to compel the Commonwealth and the Governor to pay 19,781 employees of long standing, hired before October of 1978, their salary payments due to be paid on July 5, 1991 and July 12, 1991.

The court allowed the intervention, as additional petitioners, of another state employees' union and two of its members (PSSU), because they represent approximately 2,000 additional employees of long standing in the same class as those represented by AFSCME.

The Commonwealth respondents justify not paying the salaries of the pre–October–1978 senior employees, as distinguished from junior employees hired thereafter, on the

ground that the absence of a general appropriation act in Pennsylvania since July 1, 1991 results in no appropriation authority for such payments as required by the Pennsylvania Constitution Article 3, § 24, which prohibits the issuance of payments without the authorization of an appropriations law.

The senior employees take the position that immediate relief, by peremptory mandamus or preliminary injunction, is warranted under the following alternative grounds:

Administrative Code Provisions

Wage Payment and Collection Law, 43 P.S. § 260.1 et seq.

Fair Labor Standards Act, 29 U.S.C. § 206(a)

Federal Civil Rights Law, 42 U.S.C. § 1983

United States Constitution Thirteenth Amendment

Because this court, on the basis of the evidence and the law, concludes that the July 5 and July 12 paydays relate to services performed during June, 1991, for which expenditures are authorized under the Administrative Code and the 1990–91 Appropriations Act, the senior employee's rights to their salary payments are clear, and peremptory judgment in mandamus must issue. The other grounds for relief need not be considered.

The petitioners also sought relief against Robert C. Jubelirer, President Pro Tempore of the Senate and Robert W. O'Donnell, Speaker of the House of Representatives, directing them to adopt a general appropriations act or other appropriations law to fund the payments sought. The President Pro Tempore and the Speaker have filed preliminary objections to the count against them.

After argument and consideration of the preliminary objections, this court sustained those preliminary objections and dismissed the legislative leaders from the suit because (1) those leaders alone cannot possibly achieve enactment of an appropriations act, and (2) the enactment of a complex appropriations act, related to policy decisions concerning revenue sources, is a matter of broad and complex discre-

tion vested in the legislature and is not subject to mandamus relief, applicable to judicial compulsion of nondiscretionary public acts.

Therefore, this case has proceeded solely upon the claims of the senior employees to receive their July 5 and July 12, 1991 paychecks for work done in June of 1991.

## Analysis of Applicable Law

Along with the state constitutional provision, Pa. Const. Art. 3, § 24, requiring appropriation authorization, this case turns entirely upon pertinent provisions of the Administrative Code. Administrative Code § 223, 71 P.S. § 83, in subsection (a) provides:

> (a) Each employee of an administrative department, of an independent administrative board or commission and of a departmental administrative board or commission, shall be paid his regular salary every other week.

Standing alone, that provision is a statutory mandate prohibiting the Commonwealth from missing any stated bi-weekly payday for its employees.

The constitutional requirement for appropriation authorization comes into play because of the absence of any such general appropriation authorization, thus far, during the month of July of 1991. However, there is no dispute as to the fact that the July 5 payday is the date for pay compensating each employee for work done during the period June 8–21, 1991, as to which there is appropriation authorization in effect for the 1990–91 fiscal year. Similarly, the July 12, 1991 payday is the date for payment of compensation to employees for work performed during the period June 15–28, 1991.

Section 621 of the Administrative Code, 71 P.S. § 240.1, in subsection (c), states as follows:

> (c) Payments for personnel services shall be charged to the fiscal year in which the expense was incurred or the liability accrued.

The fact is that the Commonwealth did *not* withhold paychecks on July 5 with respect to the *junior* state employees hired after October of 1978.

Also pertinent is the undisputed personnel compensation history of the Commonwealth, to the effect that between October 1978 and mid–1985, senior employees were paid on a before-the-fact basis, that is, a current basis under which they were compensated for two weeks of work on the final day of those two weeks. Junior employees hired after October 1978 have always been paid on an after-the-fact basis, under which they receive their compensation two weeks after the end of the period for which they were being thereby compensated. In July 1984, the General Assembly enacted Administrative Code, § 223, 71 P.S. § 83, in which subsection (c) defined after-the-fact pay and subsection (b) provided that all employees shall be paid on an after-the-fact pay basis. With respect to the senior employees, being then shifted from before-the-fact to after-the-fact, subsection (d) provides:

> (d) Any employee on a before-the-fact pay basis on the date of conversion would receive a conversion payment equal to his bi-weekly salary in order to avoid any employee missing a payday in the process of conversion. *Such conversion payments shall be recoverable by the Commonwealth upon severance of the employee from State service.* After the date of conversion, employees shall continue to be paid every other week. (Emphasis added.)

Thus, although senior employees have been ahead by one paycheck since 1985, that payment—in effect a loan to them by the Commonwealth—be charged against them at this time; the Administrative Code clearly states that the Commonwealth can recover it from them only at the time of their respective terminations.

Indeed, the Commonwealth does not claim in this case that it is entitled to withhold the July 5 and July 12 pays from the senior employees on the basis of presently recoup-

ing the conversion payment not actually owed by them until their departure from service.

Instead, the Commonwealth presents an argument, based upon testimony of a Commonwealth witness, that the administrative budget estimating process places the senior employees in a position of not being able to rely upon Administrative Code § 621(c) which allows and requires that payment for employee services shall be charged to the fiscal year in which the work was done—in this case, the 90–91 fiscal year for which constitutional appropriation authority does exist.

The Commonwealth contends that 1984–85 appropriations were not sufficient to cover the extra conversion payment received by senior employees at that time, so that payment of senior employees for their work at the end of June, 1985 had to be drawn from the succeeding fiscal year, 1985–86. The Commonwealth evidence is to the effect that the budget estimating theory applied by administration officials has proceeded on that basis throughout the more than one-half decade since 1985, with the budget estimates in each year being calculated, as to senior employees only, on the basis that the funding for their end-of-June services would come from the succeeding fiscal year.

Although one might reasonably conjecture that the initial higher salary expenditure to employees in 1985 would by now have been smoothed out over the successive years, with a likelihood of being offset by funds periodically available from vacant positions or other sources, this court accepts as credible the budget estimate process described by the Commonwealth witness.

However, a budget estimating theory is a matter entirely different from the statutory declaration of funding authorization contained in the General Appropriation Act, and an administrative theory for making budget estimates, while useful, cannot have any legal effect to contradict the provision of funds in the appropriation act itself.

The Commonwealth has been unable to present any evidence to establish that the respective appropriations for the several and numerous departments and agencies, whose senior employees are involved here, was entirely exhausted as of June 30, 1991. Despite counsel's contention that such was the case, there is no evidence to sustain the claim. Certainly the budget estimating process, described above, provides no evidentiary basis for concluding that each and every appropriation from a related series of departmental appropriations has been exhausted.

Moreover, even if some specific appropriations were exhausted, the exhaustion of appropriations would provide no basis for distinguishing between the senior employees and the junior employees, in order to justify skipping paydays for the former. Such a distinction, regardless of intent, would constitute a recoupment of the conversion payment, and, as noted above, the recoupment of the conversion payment from the senior employees at this time is expressly forbidden by the Administrative Code requirement that such recoupment occur only upon their severance from employment.

Therefore, this court's conclusion, upon the facts and the plain unambiguous words of the Administrative Code, must be that the Commonwealth is compelled by law to pay the senior employees for their June, 1991 work upon their respective paydays of July 5 and July 12 relating to that June work.

■ Therefore, because the Commonwealth in this matter is bound to obey the clear statutory requirements, the petitioners are entitled to relief with respect to the July 5 and July 12, 1991 paydays. In Pennsylvania, the violation of an express statutory provision per se constitutes irreparable harm, *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947), and a preliminary injunction may issue where the other requisite elements are present, as here.

However, for clarity, this court will embody the relief in terms of the issuance of a writ of peremptory mandamus, which under Pa.R.C.P. No. 1098, can be issued where the right of the petitioner is clear. *Equitable Gas Co. v. Pittsburgh*, 507 Pa. 53, 488 A.2d 270 (1985).

Here, under the plain language of the Administrative Code quoted above, and the authorization provided by the 1990–91 General Appropriations Act, the lawfulness and necessity of honoring the July 5 and July 12 paydays is clear, and peremptory mandamus will issue on that basis.

## ORDER

NOW, July 10, 1991, pursuant to petition for review seeking mandamus relief and application for peremptory mandamus, and upon consideration of evidence presented in a hearing and of briefs and argument by counsel, it is hereby ORDERED as follows:

1. The preliminary objections of Robert C. Jubelirer, President Pro Tempore of the Senate, and Robert W. O'Donnell, Speaker of the House of Representatives, are hereby sustained and those respondents are dismissed as parties to this action;

2. Respondents Governor Robert P. Casey, Secretary of Administration Joseph Zazyczny and the Commonwealth of Pennsylvania, through its other appropriate officials, are hereby peremptorily commanded to honor the paycheck issuance obligations for the paydays of July 5, 1991 and July 12, 1991, respectively, as to the respective Commonwealth employees, represented by petitioners, who were hired before October 1978; and

3. Pursuant to Pa.R.A.P. 1732, it is hereby ordered that no appeal from this order shall be effective as an automatic supersedeas because respondents are not likely to prevail on the merits, the employees represented by petitioners will suffer irreparable injury and no harm to the Commonwealth government or to the public is likely to result from compen-

sation of state employees for services performed by them pursuant to constitutional appropriation authorization.