628 A.2d 1210

**SAVE OUR SCHOOL, An Unincorporated Association of Parents of Conshohocken in the name of Vincent Ferst, trustee ad litem, Philip and Lois Mason, Patricia D. Wertz, Jo Ann Phinizy, Barbara Cuthbertson, Deborah Soto and Elso Sanchez**

**v.**

**COLONIAL SCHOOL DISTRICT, Stuart W. Kessler, Dennis M. Powell, Beverly Brown, Richard A. Connolly, Jack Pinheiro et al., Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1993.

Decided July 8, 1993.

672

Ralph J. Kelley, for appellants.

Gary R. Leadbetter, for appellees.

Before COLINS and SMITH, JJ., and KELTON, Senior Judge.

SMITH, Judge.

Colonial School District (District) and the nine members of its School Board appeal a July 7, 1992 order of the Court of Common Pleas of Montgomery County granting Save Our School's preliminary injunction ordering the School Board to rescind a resolution closing the Conshohocken Elementary School (CES) and enjoining it from voting to close CES at its scheduled August 20, 1992 meeting without fully complying with Section 780 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 563, *as amended,* added by Section 1 of the Act of April 4, 1984, P.L. 19, 24 P.S. § 7–780.[1] The

1. Section 780 of the Code provides:
   **§ 7–780. Public Hearing prior to closing school**
   In the event of a permanent closing of a public school or substantially all of a school's facilities, the board of school directors shall

issues presented here are whether the trial court erred in concluding that the School Board voted to close CES at its April 23, 1992 meeting; and whether the trial court erred when it determined that Section 780 of the Code applied to the School Board's actions.

In an appeal from the entry of an order granting a preliminary injunction, this Court's scope of review is to determine whether there were any apparently reasonable grounds in the record to justify its issuance. *Fischer v. Department of Public Welfare*, 497 Pa. 267, 439 A.2d 1172 (1982). This Court will not interfere with the trial court's decision absent a plain abuse of discretion, where no grounds exist to support the decree, or where the rule of law relied upon was palpably misapplied. *Unionville–Chadds Ford School District v. Rotteveel*, 87 Pa.Commonwealth Ct. 334, 487 A.2d 109 (1985).

Furthermore, for a preliminary injunction to be sustained, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted. *Id.* Although courts are not super school boards and should not interfere with the discretionary exercise of a school board's power, a mandatory preliminary injunction interfering with that discretion is appropriate where a school board's action is based on a misconception of the law. *Id.* This Court must therefore examine the factual and legal bases for the issuance of the preliminary injunction and determine whether there were apparently reasonable grounds for the trial court's action.

At the hearing before the trial court, Save Our School introduced the testimony of the District superintendent, Dr. Stanley Durtan, who testified that in the fall of 1992, the District began considering options to maintain acceptable student-to-teacher ratios in its schools. At a March 16, 1992

hold a public hearing on the question not less than three (3) months prior to the decision of the board relating to the closing of the school. Notice of the hearing shall be given in a newspaper of general circulation in the school district at least fifteen (15) days prior to the date of such hearings.

meeting, Dr. Durtan presented the School Board with a list of options including what came to be known as "Option Three" which required closing one of the District's kindergarten through third grade (K–3) schools and reassigning its students to the District's remaining schools. Dr. Durtan testified that the drafting and presentation of Option Three was premised upon the closing of CES. After studying the issue, the District reduced the number of available options to four, including Option Three.

Dr. Durtan placed in the April 8, 1992 Norristown Times Herald the following notice:

Pursuant to Section 780 of the Public School Code of 1949, a public hearing will be held at 7:30 p.m. on Thursday, April 23, 1992 on the question of a permanent closing of a public school in the Colonial School District. The meeting will be held in the Administrative Board Room of the Colonial Elementary School.

The notice did not specify the name of the school targeted for closing. In addition, before the April 23 hearing, the District sent to the parents of CES students a "news alert" which explained the four options and stated that if CES were closed, about 297 CES K–3 students would be reassigned to other schools. The news alert did not mention the possibility of closing any schools other than CES.

The April 23 public hearing was not held in the Colonial Elementary School as advertised, but rather at the Plymouth–Whitemarsh High School. On that same date, the School Board held its regular monthly meeting. When the special public hearing began, the president of the School Board announced that the one-half hour hearing was being held to consider the closing of CES, and that it would also address the issue during its regular session following the special hearing. During its regular session, the School Board continued to discuss the closing of CES, and then passed a resolution adopting Option Three. The president of the School Board gave assurances that the District would maintain the closed CES building.

Although the final draft of the minutes of the School Board's April 23 regular session does not specifically mention that the Board was closing CES, the School Board president testified that he was referring to CES when he discussed the closed school building.[2] Dr. Durtan testified that shortly after the Board adopted Option Three, all CES students were assigned to other schools, the CES principal and all CES teaching and support staff were reassigned, and all items pertaining to CES were deleted from the District's budget. Notwithstanding the above evidence, the District maintains that it did not vote to close CES at its April 23 meeting, but merely adopted a redistricting plan. However, as the record indicates, there were apparently reasonable grounds for the trial court to find that the School Board's April 23 action was a vote to permanently close CES.

■ The District next argues that it has the statutory authority to close a school without notice to the public and without holding a public hearing because Section 1311 of the Code, 24 P.S. § 13–1311, authorizes school boards to close public schools in their districts.[3] In 1984, however, the legislature enacted Section 780 of the Code which sets forth specific procedures to involve the public in school board decisions related to closings of public schools. Section 780 clearly requires that school boards obtain community input at a duly advertised public meeting at least three months before voting to permanently close a school or substantially all of its facilities. Since the adoption of Option Three had the effect of

**2.** The final draft of the minutes of the April 23 meeting was completed after the Board became aware of this litigation. These minutes contain revisions, and the Board did not produce prior drafts of the minutes during discovery or at the hearing before the trial court.

**3.** Section 1311 of the Code provides in pertinent part:

§ **13–1311. Closing schools.**

(a) The board of school directors of any school district may, on account of the small number of pupils in attendance, or the condition of the then existing school building, or for the purpose of better gradation and classification, or other reasons, close any one or more of the public schools in its district. Upon such school or schools being closed, the pupils who belong to the same shall be assigned to other schools, or upon cause shown, be permitted to attend schools in other districts.

permanently closing CES, the School Board was required to comply with Section 780. Because the public hearing was held on the same night that the Board voted to close CES, it violated the three-month waiting period required by Section 780. Therefore, the trial court did not err in ordering the Board to rescind its Option Three resolution to the extent that it had the effect of closing CES.[1]

■ The trial court's July 7 order also enjoined the School Board from voting to close CES on August 20 because the notice for the April 23 public meeting did not specify the name of the school being considered for closing. The newspaper notice referred to Section 780, but did not specify the name of the school targeted for closing. Although the statute does not expressly state that the name of the school must be included in the notice, the trial court held that it must and that the District therefore could not comply with Section 780 in time for the School Board's scheduled August 20 vote.

The District maintains that the notice for its April 23 meeting was sufficient and that the trial court erred in determining that the District was required to give notice of the name of the school being considered for closing. This Court disagrees. Clearly, the notice provision allows an opportunity for public comment by parents whose children would be affected by the proposed closing. The phrase "the closing of the school" in Section 780 indicates that the public hearing should pertain to the closing of a particular school. Otherwise, an announcement about the possibility of closing some unknown school would not give the necessary notice to affected students and their families. Thus the District's failure to include the name of the school in the notice renders it insufficient.[5]

4. The trial court's order left intact the portion of the Option Three resolution which affected redistricting and reassignment of students.

5. The District stipulated that it did not advertise the hearing in Montgomery County's weekly legal newspaper pursuant to Section 308 of the Newspaper Advertising Act, 45 Pa.C.S. § 308, which requires that every notice required by law to be published in a newspaper of general circulation be published in a weekly county legal newspaper. Furthermore, because the public hearing was not held at the advertised

Notwithstanding that the District initially attempted to advertise under Section 780, it now contends Section 780 does not apply even if the April 23 action was a "closing" because only Section 1311(a) governs the District's actions. The District further argues that Section 780 applies only to a "permanent closing" of a school, and not to the action taken by the District since it intends to maintain the CES building. Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933, mandates that where a general provision in a statute is in conflict with a special provision in the same or another statute, the two shall be construed if possible so that effect may be given to both. Furthermore, if the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision was enacted later and it is the manifest intention of the general assembly that such general provision shall prevail.

Section 1311(a) is a general provision of the Code which authorizes school boards to close schools in their districts, while Section 780 is more recent and contains special notice, hearing, and waiting period provisions. There is nothing in the language of Section 1311(a) which permits a school board to avoid the requirements contained in Section 780. Since the special provisions in Section 780 were enacted later than the general authorization to close schools in Section 1311(a), the District must comply with Section 780 when it permanently closes a school.

Moreover, the District clearly contemplated proceeding under the provisions of Section 780 as evidenced by the fact that public notice was given under Section 780, and the District's superintendent testified that the District saw the closing of

location, the Board committed an additional violation of the notice requirements of Section 780. Therefore, the April 8 advertisement did not satisfy the requirements of Section 780.

In addition, this Court has held that a violation of a statute per se constitutes immediate and irreparable harm justifying the issuance of a preliminary injunction. *Hempfield School District v. Election Board of Lancaster County,* 133 Pa.Commonwealth Ct. 85, 574 A.2d 1190, *appeal denied* 525 Pa. 650, 581 A.2d 575 (1990).

CES as a "long term solution" and intended to keep the school closed for the foreseeable future. In addition, the April 8 newspaper notice specifically referred to a permanent closing and that notice was given pursuant to Section 780. Thus the record contains apparently reasonable grounds upon which the trial court could conclude that the closing was permanent and therefore required compliance with Section 780 of the Code. Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 8th day of July, 1993, the order of the Court of Common Pleas of Montgomery County is affirmed.