Andrew CROWE, a minor, by his parents and guardians, Wayne CROWE and Diane Crowe, Preston Falascino, a minor, by his parents and guardians, Dominic Falascino and Christine Falascino and Alyssa Hensel, a minor, by her parents and guardians, Dennis Hensel and Mary Hensel,

v.

SCHOOL DISTRICT OF PITTSBURGH, and John W. Thompson, Superintendent, School District of Pittsburgh, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2001.

Decided Aug. 26, 2002.

R. Russell Lucas, Jr., Pittsburgh, for appellant.

Philip J. Murren, Camp Hill, for appellees.

Before PELLEGRINI, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

The School District of Pittsburgh (District) appeals from an order issued by the Court of Common Pleas of Allegheny County. The order granted a preliminary injunction requiring the District to continue busing service for children attending private half day kindergarten programs. For the reasons that follow, we vacate the order of the Court of Common Pleas.

This dispute arose when the District redesigned its kindergarten services, elimi-

nating all but two of its half day kindergarten programs in favor of day long programs.[1] As a result of its program change and new schedule, the District discontinued mid-day bus service for all of its kindergarten students. The District informed non-public school administrators by letter that:

Pittsburgh Public Schools will no longer provide transportation for half-day kindergarten programs in the 2000–2001 school year.

According to Pennsylvania Act 372, we must provide equitable transportation to all City of Pittsburgh residents who attend non-public schools. Since we will no longer transport students to half day programs in Pittsburgh Public Schools, we will not provide half-day transportation to non-public schools.

Of course, your school may continue to offer half-day programs, and we will transport half-day students either to school for your regular start time, or from school at your regular dismissal time. Parents will have to make their own arrangements for mid-day transportation if they choose to enroll their child in a half-day program.

Letter by Theodore R. Vasser III to Non-public School Administrators, dated March 31, 2000. The Catholic Diocese of Pittsburgh disagreed with the District's position, and attempted to persuade the District that it was obligated under Section 1361(1) of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1361(1), to provide mid-day busing. After several further exchanges and failed negotiations Andrew Crowe, Preston Falascino, and Alyssa Hensel filed a suit in equity in the Court of Common Pleas of Allegheny County.

Pursuant to plaintiffs' complaint, two hearings were held to determine whether plaintiffs should be granted a preliminary injunction.[2] At the first hearing, Mrs. Falascino testified that since the District stopped busing, she drives her son approximately twenty minutes to and from a morning kindergarten session, she loses sleeping time, and she has changed her schedule at home. On cross examination, Mrs. Falascino conceded her son has not missed any school because of transportation problems. Mrs. Crowe also testified, stating that since busing stopped she has experienced logistical problems in carpooling various young children to and from school. Mrs. Crowe also conceded that her son has not missed any school because of a lack of transportation.

The parties additionally presented the testimony of Dr. Robert Paserba, Superintendent of Catholic Schools for the Diocese of Pittsburgh and Theodore Vasser III, Director of Transportation for the District. Dr. Paserba testified that the Diocese currently offers three kindergarten programs, with 49 children in the morning program, 20 in the afternoon, and 68 in the full day. Of the children attending half day programs, Dr. Paserba stated that 52 desire mid-day busing. Mr. Vasser testified that the District eliminated mid-day busing throughout the school district, including busing for the two remaining public half-day programs. Based on the foregoing testimony, the trial court granted an emer-

1. The District asserts that the two remaining half day programs remain in place because of logistical problems and that they too will eventually become full day programs. No busing service is provided for these two sites.

2. Several of the plaintiff-parents were also deposed. However, their depositions are not in the record. Further, the only hearing transcript made a part of the record was the hearing held October 4, 2000. The October 18, 2000 hearing transcript appears solely in the District's reproduced record.

gency preliminary injunction and scheduled a second hearing.

At the second hearing, Mr. Vasser again testified regarding the District's busing policy, stating that in the 1999/2000 school year the District spent $9,328.00 on midday busing for public schools, compared with $172,800.00 for non-public schools. Plaintiffs presented the testimony of Father Kris Stubna, Secretary of Education for the Diocese of Pittsburgh. Father Stubna testified that at a minimum there are 50 kindergarten students requiring mid-day busing. He qualified that number by indicating that if transportation was available, some students would choose to attend half day programs rather than full day programs. Based on the foregoing the trial court granted a preliminary injunction, requiring the District to bus all non-public school students attending half-day kindergarten programs.

On appeal to this court, the District asserts that plaintiffs failed to meet the standard for the grant of a preliminary injunction, that the trial court erred in interpreting Section 1361(1), and that the trial court erred in ordering the performance of a discretionary act.

■■■ We begin by noting the well-established standards applicable to the issuance of a preliminary injunction, and this court's review of such a decision.

"In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted."

A mandatory injunction which commands the performance of some positive act requires a much stronger case.

*Roberts v. Sch. Dist. of Scranton,* 462 Pa. 464, 469, 341 A.2d 475 (1975) (quoting *Zebra v. Pittsburgh Sch. Dist.,* 449 Pa. 432, 437, 296 A.2d 748, 750 (1972)).[3] Nonetheless,

Although courts are not super school boards and should not interfere with the discretionary exercise of a school board's power, a mandatory preliminary injunction interfering with that discretion is appropriate where a school board's action is based on a misconception of the law. This Court must therefore examine the factual and legal bases for the issuance of the preliminary injunction and determine whether there were apparently reasonable grounds for the trial court's action.

*Save Our Sch. v. Colonial Sch. Dist.,* 156 Pa.Cmwlth. 671, 628 A.2d 1210, 1211–12 (1993) (citation omitted). Finally, any such injunction must be narrowly tailored to address the wrong plead and proven. *Anchel v. Shea,* 762 A.2d 346, 355 (Pa.Super.2000); *Karpieniak v. Lowe,* 747 A.2d 928, 931 (Pa.Super.2000).

The District argues that the plaintiffs failed to establish that they would suffer immediate and irreparable harm if an injunction were not issued. If the plaintiffs were required to show personal harm that is actually irreparable in this case, we would agree.

■■ However, as we have repeatedly held, "a violation of an express provision of a statute is per se irreparable harm for purposes of a preliminary injunction." *Pleasant Hills Constr. Co. Inc. v. Pub.*

---

**3.** Additionally, we often consider whether greater injury will occur from refusing the injunction than granting it and whether the injunction returns the parties to the status quo as it existed prior to the alleged wrongful conduct. *Cappiello v. Duca,* 449 Pa.Super. 100, 672 A.2d 1373, 1376 (1996).

*Auditorium Auth. of Pittsburgh,* 782 A.2d 68, 79 (Pa.Cmwlth.2001), *rev'd on other grounds,* 567 Pa. 38, 784 A.2d 1277 (2001) (citing *Council 13, Am. Fed'n of State, County and Mun. Employees, AFL–CIO v. Casey,* 141 Pa.Cmwlth. 199, 595 A.2d 670 (1991)). Thus, the dispositive question is whether the District's policy violates the express terms of the School Code. Section 13–1361 of the Code reads in relevant part:

The board of school directors in any school district *may,* out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway ... When provision is made by a board of school directors for the transportation of public school pupils to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided, the board of school directors *shall* also make *identical* provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided. Such transportation of pupils attending nonpublic schools *shall be provided during regular school hours on such dates and periods that the nonpublic school not operated for profit is in regular session, according to the school calendar officially adopted by the directors of the same in accordance with provisions of law.* The board of school directors *shall* provide such transportation whenever so required by

any of the provisions of this act or of any other act of Assembly.

24 P.S. § 13–1361(1) (emphasis added). The statute clearly indicates that the initial decision to provide any busing, whether to public or qualified private students, is within the board's discretion. However, once the decision is made to provide busing to public school students, the statute mandates that school boards "shall also make identical provision" for the transportation of qualified private school students "during regular school hours" in accordance with the official school calendar of the non-public school.

Focusing exclusively on the "identical provision" language, the District argues that it has offered to provide identical busing by transporting the diocesan kindergartners to their schools at the beginning of the day and to their homes at the mid-afternoon dismissal time, the same transportation afforded all public school kindergartners. Plaintiffs, on the other hand, look to the "regular school hours" provision to argue that if the District provides busing, it must bus the diocesan kindergartners whenever the diocese allows its students to attend school. We cannot embrace either interpretation of the Code, because each relies upon one critical provision of Section 13–1361 to the exclusion of the other. The problem with the District's view of its duties is that it is too restrictive. While its announced policy may offer identical busing, it ignores the statutory mandate that the busing be provided in accordance with the non-public school's calendar and schedule. On the other hand, we believe that the plaintiffs' reading of the Code is far too expansive. The record reflects that the Pittsburgh Diocesan schools offer parents the option of morning kindergarten, afternoon kindergarten or all day kindergarten. The position maintained by plaintiffs is that

under the "regular school hours" provision the District must provide each student with transportation to and from school for whichever segment his parents have selected. The logical extension of this argument is that if a non-public school allows parents to send his child to kindergarten during any 2½ hour period [4] that the school is in session, each student is entitled to round trip transportation at whatever times of day his parents find convenient. Aside from the absurdity of such a result, the plaintiffs' interpretation of the Code is flawed in two respects.

First, the diocesan schools have not established "regular school hours" for these students, but have offered a menu of options such that each kindergartner's school hours is set by his parents. To be entitled to busing in accordance with its schedule rather than that of the District, we believe a non-public school must set regular school hours. Second, providing multiple round trips to and from each school to accommodate individual choices of schedules is not identical to the transportation offered the public school kindergartners—it is an upgraded, deluxe version of what they have. To accord meaning to all provisions of Section 13–1361, we hold that if the District provides one round trip each day to its kindergartners, it must provide one round trip to private school kindergartners. If a non-public school has regular hours, whether morning, afternoon or all day,

busing to and from that school must be in accordance with its schedule.

Thus, while common pleas properly enjoined the overly restrictive policy announced by the District in its letter of March 31, 2000, the scope of the injunction, accepting plaintiffs' interpretation of the Code, was overbroad. Accordingly, we vacate the order and remand for further proceedings, including a permanent injunction hearing, in accordance with this opinion.

### ORDER

AND NOW, this 26th day of August, 2002, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is VACATED and the matter REMANDED for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

Dissenting Opinion by Judge PELLEGRINI.

I respectfully dissent from the majority's rationale that Section 1361 of the Public School Code of 1949 (School Code) [1] does not require the School District of the City of Pittsburgh (School District) to continue busing non-public school students to both morning and afternoon kindergarten classes when its own morning and afternoon kindergarten session had been expanded to full-day programs.

Section 1361(1) of the School Code [2] provides that once a public school district

---

4. 22 Pa.Code § 11.3 requires 2½ hours minimum instruction time per day for kindergarten students.

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1361(1).

2. Section 1361(1) provides in pertinent part:
   The board of school directors in any school district *may,* out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway ... *When provision is made by a board of school directors for the transpor-*

implements busing at the kindergarten, elementary or secondary school level, it also must provide identical transportation services to non-public schools located within the school district or within a ten-mile radius of the school district. As required by Section 1361(1) of the School Code, the School District provided busing services for students attending both public and non-public half-day kindergarten sessions. Prior to the commencement of the 2000–2001 school year, however, the School District chose to expand its half-day kindergarten programs to full-day sessions, and by memorandum dated March 31, 2000, informed private and parochial schools that all of its mid-day busing services would be suspended as a result of the expansion. In the memorandum, the School District noted that it would only transport students attending half-day kindergarten programs either to school at the regular start time or from school at the regular dismissal time.

Parents of children attending the half-day kindergarten programs in private and parochial schools (Parents) filed a suit in equity in the Court of Common Pleas of Allegheny County (trial court) seeking a preliminary injunction to enjoin the School District from discontinuing its mid-day busing services. Finding that the School District was required by Section 1361(1) of the School Code to continue its mid-day service to the private and parochial schools, the trial court subsequently granted Parents' injunction. The trial court determined that once free busing was pro-

vided by the School District to all kindergarten students, Section 1361 specifically required the School District to adhere to the non-public school calendar and not its own in establishing busing schedules.

While purportedly affirming the trial court's grant of a preliminary injunction and agreeing with the School District's position, the majority states that the "identical provision" in Section 1361(1) only requires a school district to provide non-public school kindergarten students with the same full-day transportation it provides its own students, and because it has eliminated mid-day transportation services for its students, those services provided to private and parochial schools must also be eliminated. The majority determined that although Section 1361(1) did not require private and parochial schools to follow the School District's exact busing schedule in order to be eligible for transportation services, it was required to set "regular school hours" consisting of one round-trip rather than a multitude of busing options not offered by the School District at their own schools.

The majority places great reliance on the fact that private and parochial schools that have half-day kindergartens have not established "regular school hours" when, in fact, the half-day programs recognized as "regular school hours" were not even a subject of dispute until the School District decided to eliminate its half-day programs. In effect, what the majority is saying is that when the public schools change their

*tation of public school pupils* to and from such schools ... the board of school directors *shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten,* elementary and high schools not operated for profit to and from such schools ... *Such transportation of pupils attending nonpublic schools shall be provided during regular school hours on such dates and periods that*

*the nonpublic school not operated for profit is in regular session, according to the school calendar officially adopted by the directors of the same in accordance with provisions of law.* The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.

24  P.S. § 13–1361(1) (Emphasis added).

"regular school hours," so must all private and parochial schools if they want their students to be able to avail themselves of transportation services. To the contrary, Section 1361(1) requires that non-public school students receive transportation opportunities that are *identical* to public schools. What "identical" means is that it is of no moment as to what time of the day these services are provided or that they are provided at various times of the day, as long as both public and private and parochial school students are provided with the same service, i.e., transportation to and from kindergarten.

Accordingly, I dissent.