Ryan C. CHIPMAN, a minor, by his parents and guardians, Kimberle A. CHIPMAN and William E. Chipman, Jr., Appellants

v.

AVON GROVE SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 2003.

Decided Feb. 6, 2004.

---

William E. Chipman, Jr., Wilmington, DE, for appellants.

Robert L. Boston, West Chester, for appellee.

Sean A. Fields, New Cumberland, for amicus curiae, PA School Boards Assoc.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY JUDGE SIMPSON.

In this appeal from the denial of an injunction, we are asked what must be provided under the "identical provision" requirement for non-public school transportation under Section 1361 of the Public School Code of 1949 (School Code).[1] Ryan C. Chipman (Student) and friend of the Court, Pennsylvania Catholic Conference, assert it means an identical transportation experience, including bus rides of identical duration with identical provision of transfer stations as those enjoyed by public school students. The Avon Grove School District (District) and another friend of the Court, the Pennsylvania School Boards Association, rely on Section 1362 of the School Code,[2] and argue a school district providing free transportation for its public school students must employ the same policy to provide free transportation for its non-public school students.

Six-year-old non-public school Student filed a complaint requesting a preliminary and permanent injunction in the Court of Common Pleas of Chester County (trial court). Student attends the Bethany Christian School in Oxford, 6 miles from his home and outside the District. Repro-

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1361.

2. 24 P.S. § 13–1362.

duced Record (R.R.) at 42. Student requested the trial court direct the District to change its private school bus routes and eliminate its bus transfer stations for non-public school students. Student asserted his bus service was not identical to that provided to the public school students in the District primarily because he must use the transfer station and his bus ride is longer.

The trial court determined neither Student's longer ride nor his use of transfer stations violates the "identical provision" of Section 1361(1). The trial court denied the preliminary injunction, and apparently denied a permanent injunction as well. Student appeals to this Court.

## I.

▇ We first raise an issue not addressed by the parties or the trial court: whether appeal from the denial of a permanent injunction is properly before us. After hearing, the trial court issued an opinion and order. The opinion discussed the facts relating to Student's transportation, and it discussed the legal analysis for a preliminary injunction. However, the last sentence of the opinion states, "Given [Student's] failure to show a clear right to relief, the request for a preliminary *and permanent* injunction is hereby denied." Opinion of April 10, 2003 at 5 (emphasis added). The accompanying Order states in pertinent part, "[Student's] request for this Court to issue an injunction (1) changing the private school bus routes, and (2) eliminating the transfer station, is hereby DENIED."

Eschewing post-trial practice, Student filed an immediate appeal to this Court. For the following reasons, we conclude the denial of a permanent injunction is not properly before us. We therefore vacate the trial court's order insofar as it relates to a permanent injunction.

▇ A preliminary injunction is to put and keep matters in the position in which they were before the improper conduct of the defendant commenced. *Little Britain Township Appeal,* 651 A.2d 606 (Pa. Cmwlth.1994). The sole object of a preliminary injunction is to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status until the merits of the controversy can be fully heard and determined. *Id.* In the hearing upon a preliminary injunction, it is neither necessary nor proper to decide the case as though on final hearing. *Id., citing Crestwood Sch. Dist. v. Topito,* 76 Pa.Cmwlth. 321, 463 A.2d 1247 (1983). A preliminary injunction cannot serve as a judgment on the merits since by definition it is a temporary remedy granted until that time when the party's dispute can be completely resolved. *Little Britain Township Appeal.*

Moreover, to the extent the order here addresses a permanent injunction, it is not appealable. Pa. R.A.P. 311(a)(4) permits an appeal as of right from an order regarding a preliminary injunction. *Nunemacher v. Borough of Middletown,* 759 A.2d 57 (Pa.Cmwlth.2000). However, an appeal may not be taken from a decree nisi granting or denying a permanent injunction unless the decree has the immediate effect of changing the status quo. G. Ronald Darlington, et al., 1 *Pennsylvania Appellate Practice,* § 311:46 (2d Ed. 2002).

Here, the denial of an injunction did not change the status quo. Moreover, no post-trial relief was sought, and the order of the trial court as to a permanent injunction never progressed beyond the decree nisi. Therefore, issues relating to the request for permanent injunction are not yet appealable. *See also Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002) (party re-

quired to file post-trial motions following a trial court's order in both actions at law and in equity in order to preserve issues it wishes to raise on appeal).

## II.

 As to the denial of the preliminary injunction, our review is to determine whether or not reasonable grounds appear for the granting of the preliminary injunction, and not to pass on the·merits of the dispute. *McMullan v. Wohlgemuth*, 444 Pa. 563, 281 A.2d 836 (1971). In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must·be irreparable if the injunction ·is not granted. *Crowe v. Sch. Dist. of Pittsburgh*, 805 A.2d 691 (Pa.Cmwlth.2002), *petition for allowance of appeal granted*, 572 Pa. 744, 815 A.2d 1043 (2003) (later withdrawn after settlement). Additionally, we often consider whether greater injury will occur from refusing the injunction than granting it and whether the injunction returns the parties to the status quo as it existed before the alleged wrongful conduct. *Id.* A mandatory injunction which commands the performance of some positive act requires a much stronger case. *Id.*

Because the thrust of Student's argument is that his transportation arrangements violate the "identical provision" requirement of the School Code, we first examine the statutory language. Student relies on Section 1361(1), 24 P.S. § 13–1361(1), titled, **When provided,** which states in relevant part (with emphasis added):

*The board of school directors in any school district may,* out of the funds of the district, *provide for the·free transportation of any resident pupil to and from the* kindergarten, elementary school, or secondary *school in which he*

*is lawfully enrolled,* provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway, except that such ten mile limit shall not apply to area vocational technical schools which regularly serve eligible district pupils.... *When provision is made by a board of school directors for the transportation of public school pupils to and from such schools ... the board of school directors shall also make identical provision for the· free transportation of pupils who regularly attend nonpublic [schools].*

The District relies on Section 1362, 24 P.S. § 13–1362, titled **Kinds of transportation, liability insurance,** which provides in pertinent part (with emphasis added):

*The free transportation of pupils,* as required or authorized by this act, or any other act, *may be furnished* by using either school conveyances, private conveyances, or electric railways or other common carriers *when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1½) miles,* and *when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by [PennDOT]. [PennDOT] shall take into account the presence of sidewalks* along the highway, but such presence of lack thereof shall not be controlling *and [PennDOT] shall consider all relevant safety factors* in making its determination as to whether or not walking constitutes a hazard to pupils.

Section 1361(1) requires "identical provision for the free transportation of pupils" to and from non-public schools where the school board "provide[s] for the free transportation of any resident pupil to and from the [public] school in which he is lawfully enrolled." 24 P.S. § 13–1361(1). Under the provision, the trigger is provision of free transportation to and from public schools. When that occurs, there must be identical provision of free transportation "of pupils who regularly attend non-public [schools]." The section offers no further description of the quality of required transportation beyond "to and from" school.

Moreover, Section 1361 is significant in its use of the plural, "pupils," when describing the beneficiary of the "identical provision" of transportation. Thus, the identical provision of free transportation is required for the class of non-public school pupils; the section does not address the provision of transportation for an individual non-public school pupil.

Section 1362 addresses "Kinds of transportation." Among other things, this statutory provision addresses how students travel to their pickup and from their drop-off points, including "the total distance which any pupil must travel by public highway to or from school," provision of "stations or other proper shelters," assessment that "the highway, road or traffic conditions are not such that walking constitutes a hazard to the safety of the child," and consideration of "all relevant safety factors . . . as to whether or not walking constitutes a hazard to pupils." 24 P.S. § 13–1362. This section identifies safety concerns and speaks to individual

pupils as well as to the class of transported students. Considering the section's language, the free transportation of pupils includes attention to the health, safety and welfare of individual pupils.

Reading the sections together, the School Code contemplates free transportation of pupils to and from schools. The only qualitative requirements for an individual student relate to health, safety and welfare.

This Court recently addressed the "identical provision" language of Section 1361 of the School Code in *Crowe*. In that case we vacated a preliminary injunction requiring continuation of mid-day busing of non-public school students. In our analysis, we considered the "identical provision" language of Section 1361(1) and the "regular school hours" provision of Section 1361(2). We concluded:

> To accord meaning to all provisions of Section 13–1361, we hold that if the District provides one round trip each day to its kindergartners, it must provide one round trip to private school kindergartners. If a non-public school has regular hours . . . busing to and from that school must be in accordance with its schedule.

*Crowe*, 805 A.2d at 696. Thus, our analysis focused on the provision of transportation to a class of non-public school students. Also, our analysis focused on the scheduling of transportation "to and from" non-public schools, rather than the quality of the transportation experience.

Neither the language of the School Code nor appellate court decisions interpreting the School Code requires identity of the quality of transportation for each student.[3] Moreover, it is unwise to attempt a quali-

3. Student relies on a trial court case which discusses the "identical provision" requirement. *Persi v. Aliquippa Borough School Dist.,* 15 Pa. D & C 3rd 52 (Com.Pl. Beaver County 1979) (non-public school students required to walk, public school students picked up at their homes; different transportation policy for public and non-public students' transportation violates "identical provision" requirement of School Code).

tative comparison for individual pupils in the absence of statutory guidance, for several reasons. First, as here, there are innumerable variables. Second, the standard for comparison is unclear. In other words, to what should an individual student's transportation be identical? Unless the provision of transportation implicates health, safety or welfare, we decline a qualitative comparison for an individual student not clearly mandated by the statute.

### A.

Considering the foregoing, we conclude the School Code does not address the quality of individual transportation arrangements in any aspect other than health, safety and welfare. Thus, no error is evident in the trial court's denial of a preliminary injunction on the basis of the duration of Student's ride and his use of a transfer station.

### B.

As to health, safety and welfare concerns for Student, he claims that the presence of older students at the transfer station and on his bus is a risk, particularly for a six-year old. He highlights a particular incident as proof. On March 4, while at the transfer station, Student accepted a dare from an older student to step in front of an oncoming school bus. The transfer station's supervising aide in charge of non-public students did not see Student step off the curb. The school bus driver, 15 feet away and driving slowly, did. The driver stopped and waved Student back before continuing. Student's parents were not told. This was not the first time Student was observed stepping off the curb in front of a bus. Student offered no specific proof regarding risks arising from the presence of older students on his bus.

In addition to the foregoing, the trial court found the District employs two adult aides to supervise non-public school students who use the transfer station. The District also employs a security officer to direct traffic and make sure unauthorized vehicles do not enter the transfer station. The trial court specifically found that "[t]he Transfer Station does not pose an immediate and irreparable harm." Opinion of April 10, 2003 at 5. In the absence of probable proof of safety problems, the trial court was not compelled to conclude that a statutory violation occurred based on the quality of transportation arrangements for Student.

### III.

Although the School Code does not address the quality of an individual non-public student's transportation beyond safety, there can be no reasonable dispute that the School Code contemplates identical policies for transportation of public and non-public students. Thus, while evaluation of an individual student's arrangements is limited, evaluation of arrangements for transportation of the class is appropriate.

The bulk of Student's proof and argument was devoted to his individual situation. However, Student also claims the District has a transportation policy for young non-public school students that is not identical to the transportation policy of like-aged public school students. In particular, Student contends non-public school students use the transfer station and may ride with older students. In contrast, public kindergarten and elementary students do not use the transfer station and do not ride with middle school or high school students. Student references testimony from the District's business manager and from a former member of the District's Board of Education, which address trans-

portation of kindergarten and elementary students.

The District submitted a written transportation policy. Ex. A of Certified Record 12. The written policy does not on its face distinguish between public and non-public students except to require non-public students to register.

■ Proof that non-public school students as a class are provided free transportation that is not identical to public school students could be a violation of the School Code. A violation of a statute is per se irreparable harm for purposes of a preliminary injunction. *Crowe.* However, it was the trial court's function to determine whether the sparse evidence on this point was believable. No error is committed when the trial court declines to accept oral testimony regarding transportation arrangements for some students as proof of disparate policy.

## IV.

■ As to the other considerations for granting a preliminary injunction, the trial court found it would cost $824,688 to abolish use of a transfer station and transport non-public school students directly from their home to school. Opinion of April 10, 2003 at 1. The trial court concluded a greater injury would result in granting the injunction than by refusing it. *Id.* at 5. However, we do not agree that violation of a statute can be excused on the basis of cost. When considering the requested permanent injunction, the trial court may not deny relief because compliance with the School Code is expensive.

Also, the trial court concluded that the District did not commit any wrongful conduct, and that, therefore, there is no prior status to which to return the parties. Given the trial court's findings as previously discussed and the trial court's decision not

to change the status of the parties, this conclusion is not in error. *Id.*

In sum, we affirm the trial court's order as to a preliminary injunction, and vacate the trial court's order as to a permanent injunction. The case is remanded for consideration of a permanent injunction consistent with this opinion.

## *O R D E R*

AND NOW, this 6th day of February, 2004, the Order of April 10, 2003 is hereby **AFFIRMED** as to the denial of a preliminary injunction, and **VACATED** as to the denial of a permanent injunction. The case is **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

Senior Judge FLAHERTY files a concurring and dissenting opinion.

CONCURRING AND DISSENTING OPINION BY SENIOR JUDGE FLAHERTY.

I agree with the result reached by the majority opinion affirming the denial of the temporary injunction, denying the permanent injunction vacating the orders of April 10, 2003 and remanding to the trial court. I do not believe the Chipmans (Student) would suffer irreparable harm if the status quo were continued until the merits of the controversy are fully heard and determined. Majority Opinion, page 1101. I also agree that the trial court erred in denying relief because of the cost that would be incurred to use another method to transport school students without the transfer station.

I do, however, disagree with the majority reasoning that indicates that at this preliminary stage of the proceedings before the hearing on the permanent injunction we should opine that it is proper for the status quo to be continued permanent-

ly and that this six year old and all other non-public school students will continue to be bussed to school in a completely different fashion than every one of the other elementary school students.

Even before all the facts are proven in the hearing on the permanent injunction, it has been found that solely because Student is not in the public school, he and all other non-public elementary school students must board a bus to a transfer station, wait for another bus there and then board a second bus to arrive at his school. Further, they must wait at the transfer station and ride on buses with middle school and high school students. If they were not non-public school student, they would receive a bus ride with only other elementary school students that would take them to school directly without waiting in a transfer station a long time for another bus.

On the occasional day when the public school is closed, student's direct ride on the school bus from home is, at most, 20 minutes. When the public elementary school is open, however, this six year old is only one example of how a short bus ride regularly becomes a journey of over an hour (up to 66 minutes in the afternoon). During this marathon ride, which is three times longer than his elementary public school friends, he and the other non-public school students are subjected to the risks of riding on the bus with and waiting at the transfer station with middle and high school students, unlike the public school elementary children who are sheltered from such risks commensurate with such compulsory association at this tender age by being furnished a bus exclusively for elementary students. One example of such risk was evident when Student was enticed by a dare from an older student to step off the curb at the transfer station when a bus was only 15 feet away from them. The fact that it happened more than once is casually ignored by the trial judge but it appears obvious that a safety problem is apparent in the unequal bussing program used by the district for non-public school elementary students who are the only elementary students exposed to such risks.

I cannot discern from the above facts in this Record how this school board is complying with the Legislature's mandate that "the board of school directors shall also make *identical* provision for the free transportation of pupils who regularly attend non-public [schools]." 24 P.S. 131361(1). Emphasis Added.

I depart from the majority opinion which reasons that the only other factors relating to the "identical" provision for a free ride are the health, safety and welfare of the individual pupils but then ignores the safety problem with the *transfer* program because there is no proof of a safety problem so far *on the bus*. In view of the intimidation to which elementary students are customarily subjected by older students by the fear of the stigma of being a "tattle tale", it is doubtful there would have been any proof of the near tragedy avoided at the transfer station except that it was witnessed by the bus driver. Majority Opinion, page 1104. To excuse it because the bus driver was driving slowly is shocking when children and adults have been killed by slow moving buses and ignores the proven fact that the supervision is so poor that Student had done this before.

Despite the broad, unequivocal mandate of the Legislature for the District to provide without limitation "identical" transportation, the majority narrows that mandate without persuasive authority when it considers it unwise to review the *quality* of transportation for individual students because there are innumerable variables and no student with which to compare the indi-

vidual's transportation as far as ascertaining whether it's *identical.* Initially, it is noted that the Legislature did not see fit to exclude the *quality* of transportation furnished, or to even mention it, when it mandated "identical". The court here chooses to legislate an exclusion into the statute so that in the future transportation must be identical except for the *quality* of transportation furnished.

With regard to there being too many variables this court regularly determines with no problem whether or not a person is being treated in a non-conforming manner, a discriminatory manner or a manner different from that to which he or she is statutorily entitled. Consequently, I suggest that it is not beyond the ken of our courts at the next hearing to determine that Student and his non-public school peers are not being furnished transportation identical to their peers who attend public school. I disagree with Student that an appellate court can find that it is necessary to eliminate the transfer station when the trial court has failed to do so.

It is, however, the duty of the school board to fashion the means to provide identical transportation, including the identical quality of the transportation. Other school boards in this state are doing it regardless if it means employing at additional cost taxicabs, mini-buses, retired senior citizens, etc., to accommodate the Legislature's mandate. To accomplish compliance with the statute, the school board may find it necessary to bus both public and non-public elementary students on the same bus directly or to the same transfer station and deal with the older student problem in another way. But, there still would be irreparable harm with no adequate remedy at law, such as damages, if continuation of the status quo is permitted.

I further disagree with the majority's interpretation that Section 1361 does not address Student's transportation problem because it does not apply to the problem of an individual non-public school student. In fact, Section 1361 contains in its beginning the mandate for free transportation to "any resident pupil". It is only later that Section 1362 limits that free ride "when the total distance which any pupil must travel ... does not exceed one and one-half (1½) miles". That is the only limitation by use of the singular "pupil" in either Sections 1361 or 1362. It is clear that the Legislative intent cannot be ascertained by focusing only on the use of the words "pupil" to clarify mileage when the word "pupils" is also used many times to indicate the broad coverage intended by the Act. Nowhere is there a basis for refusing to enjoin a violation of the mandate for "identical" transportation by excluding from it the quality which is not identical or the fact that only one student has proven it is not identical. Such a conclusion leaves only something like a class action for students and/or their parents to enforce a statute enacted to confer a benefit on them rather than to foist on them a large financial legal burden to identify all the other children who wish to complain. The public policy of Pennsylvania has been clearly expressed that no child shall be discriminated against when it comes to identical free transportation. If the quality of the transportation must be deleted from the benefits of the Act, the Legislature is the proper reformer, not this court.

I do, therefore, concur in the denial of the temporary injunction and the remanding for further proceedings but I dissent from that part of the remand that such proceedings be consistent with the majority opinion since it is error to sanction transportation for non-public school students that is obviously not identical to that

of public school students and is in violation
of the School Code.